(No. 55370.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LARRY MACK, Appellant.

*Opinion filed April 20, 1989.—Rehearing denied May 26, 1989.*

232

234

Michael J. Pelletier, Deputy Defender, and Patricia Unsinn, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Kevin Sweeney, Assistant State's Attor-

neys, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Larry Mack, was convicted in the circuit court of Cook County of murder and armed robbery and was sentenced to death for the murder conviction. This court affirmed the defendant's convictions and death sentence in *People v. Mack* (1984), 105 Ill. 2d 103. One of the issues presented in that appeal, and resolved against the defendant, who is black, was his argument that the State had exercised its peremptory challenges to purposefully exclude a number of black veniremen, on the basis of their race, from the sentencing jury that sat in this case. In rejecting that argument we relied on our decisions in *People v. Williams* (1983), 97 Ill. 2d 252, *People v. Davis* (1983), 95 Ill. 2d 1, and *People v. Gaines* (1981), 88 Ill. 2d 342, which had interpreted *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, as requiring the proponent of such a claim to present proof of the systematic and purposeful exclusion, in case after case, of black veniremen from juries. The defendant had failed to present evidence of that nature.

After our decision in the defendant's direct appeal, and while the defendant's petition for *certiorari* was pending in the United States Supreme Court, the Supreme Court held in *Batson v. Kentucky* (1986), 476 U.S. 79, 96, 90 L. Ed. 2d 69, 87, 106 S. Ct. 1712, 1722, "that a defendant may establish a *prima facie* case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." The Supreme Court later held, in *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, that the rule expressed in *Batson* was applicable to cases pending on direct review. On February 23, 1987, following its decision

in *Griffith*, the Supreme Court vacated our judgment in the defendant's case and remanded the cause to this court for consideration in light of *Griffith*. *Mack v. Illinois* (1987), 479 U.S. 1074, 94 L. Ed. 2d 127, 107 S. Ct. 1266.

On May 1, 1987, we remanded the cause to the circuit court of Cook County for a hearing on the *Batson* issue. At the conclusion of the hearing the judge ruled against the defendant. Pursuant to our order of May 1, 1987, the judge filed his findings of fact and conclusions of law, together with the record of proceedings, with the clerk of this court.

The defendant was charged with murder and armed robbery in connection with his role in a bank robbery that occurred in Chicago on November 23, 1979. In the course of the robbery the defendant shot and killed Joseph Kolar, a security guard. The defendant was convicted of murder and armed robbery in a bench trial in June 1981. Following the defendant's conviction for murder, the State sought a death penalty hearing, and the defendant requested a jury for that purpose. In selecting the sentencing jury, the prosecutors exercised 16 of their 20 peremptory challenges; of the 16 peremptory challenges that were used by the State, 13 were made to black members of the venire, and three were made to white members of the venire. The jury ultimately chosen by the parties consisted of 10 whites, one Asian, and one black. The jury sentenced the defendant to death.

By the time the action was remanded to the circuit court for a hearing on the *Batson* issue, the judge who presided at the defendant's trial and sentencing hearing had retired, and therefore the hearing was conducted before a different judge. At the hearing the court found that the defendant had established a *prima facie* case of racial discrimination under *Batson* in the State's use of peremptory challenges in the selection of the sentencing

jury. (See *Batson*, 476 U.S. at 96-97, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1722-23.) The burden then shifted to the State to provide race-neutral explanations for its exclusion of the veniremen. (See *Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1723-24.) Explanations were provided by one of the two prosecutors who had conducted the sentencing hearing. At the close of the proceedings, the judge ruled that the explanations offered by the State were race neutral and were sufficient under *Batson*.

The circuit court's findings and conclusions, together with the record of proceedings, have been submitted for our review. In the present case the defendant challenges the circuit court's determination of the *Batson* claim and, in addition, raises a number of arguments concerning the procedures followed in the court below.

As we have stated, at the defendant's sentencing hearing the prosecution used a total of 16 peremptory challenges, and 13 of the challenges were exercised against black members of the venire. The defendant contends that the reasons relied on by the State in exercising its peremptory challenges to black veniremen were pretextual. The defendant maintains that many of the black veniremen excused by the State had the same characteristics as white veniremen whom the State did not challenge. The defendant also argues that in a number of instances insufficient information was known about a venireman to warrant a decision by the State to exclude the prospective juror.

Participating in the *Batson* proceedings was one of the two assistant State's Attorneys who had prosecuted the defendant in this matter. His partner, who had since entered private practice, was unavailable. At the hearing, the prosecutor explained that in selecting the defendant's sentencing jury he and his partner had decided jointly whether to accept persons as jurors; if ei-

ther prosecutor believed that a venireman should not serve on the jury, the person was excused. In a majority of instances the prosecutors had provided, during *voir dire*, explanations for their challenges to black veniremen. Although at that time there was no requirement that the State provide such an account, the prosecutors had offered the explanations in response to defense objections that the State was excusing black veniremen on the basis of race.

At the *Batson* hearing the judge found that the defendant established a *prima facie* case of discrimination. The prosecutor then provided explanations for the State's use of its peremptory challenges to the black veniremen. Where a contemporaneous explanation had been offered during *voir dire*, the prosecutor repeated the explanation, adding details in some cases. After further proceedings, in which defense counsel responded to the State's explanations of its challenges, the judge found that the reasons relied on by the prosecutors had been race neutral and were sufficient under *Batson*.

The appropriate standard of review in this case is whether the decision of the circuit judge is against the manifest weight of the evidence. (*People v. McDonald* (1988), 125 Ill. 2d 182, 199.) Contrary to the defendant's argument, the manifest-weight standard is applicable here even though the proceedings were not conducted before the same judge who had presided over the *voir dire* at issue. In *Batson* the Supreme Court noted that because "the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." (*Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21, 106 S. Ct. at 1724 n.21.) In this case, the circuit judge, in determining the defendant's *Batson* claim, was required to consider both the credibility of the prosecutor in explaining the reasons for the

State's exercise of its peremptory challenges and the race neutrality of the explanations themselves. As we have noted, the explanations were being offered by one of the State's participants in the jury selection process. The prosecutor's credibility was no less at issue simply because the judge hearing the matter had not presided over the *voir dire*. We decline to depart from the manifest-weight standard in this case.

In *Batson*, the Court "emphasize[d] that the prosecutor's explanation [for exercising a peremptory challenge] need not rise to the level justifying exercise of a challenge for cause." (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) The State's explanation for the exclusion of a black venireman cannot be considered race neutral, however, if the State failed to exclude white veniremen having the same or similar characteristic, and there are no further characteristics meaningfully distinguishing the white veniremen who were retained from the black veniremen who were challenged. (See *People v. McDonald* (1988), 125 Ill. 2d 182, 199; see also *United States v. Wilson* (8th Cir. 1988), 853 F.2d 606, 610.) But as the State accurately notes, in many instances there will be no single criterion that serves as the basis for the decision whether to excuse a particular venireman. A characteristic deemed to be unfavorable in one prospective juror, and hence grounds for a peremptory challenge, may, in a second prospective juror, be outweighed by other, favorable characteristics. With these considerations in mind, we now turn to the individual challenges exercised by the State in the selection of the defendant's sentencing jury.

The State excused five black veniremen on the basis of their demeanors. In each instance the prosecutors had stated during *voir dire* their objections to the individuals, and at the *Batson* hearing the prosecutor repeated the earlier explanations, citing the appropriate places in

the *voir dire* transcript. Tessie Garner was excused because she failed to make eye contact with the prosecutors. Lillie Crosby was challenged because she hesitated in responding to questions regarding her attitude to capital punishment. Robert White was excluded because he responded in a casual manner to several questions; the prosecutor also said that White looked at the defense counsel and the defendant but not at the prosecutors. Marilyn Lockwood was excused because she did not seem to understand certain questions she was asked in *voir dire*. The prosecutor also noted that in response to the question whether any relatives had been the victims of crime, she replied that a cousin had been beaten by "little boys," which the prosecutor thought was an odd choice of words. Frances Williams was excluded because her answers to questions regarding her attitude to the death penalty did not seem to be candid.

In *People v. Young* (1989), 128 Ill. 2d 1 (op. by Ward, J.), we upheld, on review of a *Batson* hearing, the prosecutor's exclusion of a prospective juror on the basis of the individual's courtroom demeanor. We observed, "The demeanor of a prospective juror has traditionally been a factor of importance in jury selection." (*Young*, 128 Ill. 2d at 20.) Other courts reviewing *Batson* claims have similarly approved the exercise of peremptory challenges on the basis of courtroom conduct of veniremen. (See *United States v. Forbes* (5th Cir. 1987), 816 F.2d 1006, 1010-11 (prospective juror's posture and demeanor evidenced hostility to jury service); *United States v. Vaccaro* (9th Cir. 1987), 816 F.2d 443, 457 (prospective juror displayed "poor attitude" in responses to *voir dire*); *United States v. Cartlidge* (5th Cir. 1987), 808 F.2d 1064, 1070-71 (prospective juror avoided eye contact with prosecutor).) We cannot say that the prosecutors in this case were unjustified in excusing the prospective jurors for the grounds they cited at *voir dire*.

The State excused three veniremen for reasons related to their employment and employment status. Walter Mackey was challenged because of an unstable job history; he worked as a security guard, and he frequently changed jobs. Geraldine Hopkins was excluded from the jury because she was employed by a well-known criminal defense firm as, in her words, a "brief specialist." Both those explanations were provided by the State during *voir dire* and were repeated at the *Batson* hearing. Barbara Price was also excused by the State; no contemporaneous explanation had been given, but at the *Batson* hearing the prosecutor explained that Price was excused because, as the *voir dire* disclosed, she was 38 years old, divorced, unemployed, and attending school. The prosecutor stated that these circumstances raised "some questions" of how she was supporting herself.

We believe that the State's concern over the employment status and positions of these prospective jurors was legitimate and race neutral. The State acknowledges that Mackey's employment as a security guard should, in its view, count as a favorable characteristic in this case, which involved the murder of a guard. The State was concerned, however, about the short periods of time that Mackey held positions. At the time of the *voir dire*, Mackey had worked four months as a guard at the Art Institute in Chicago; he described the position as "a summer job." He had held his three most recent positions for periods of nine months, six months, and "about seven months," respectively. Mackey explained that he had been working at different security agencies for 10 years.

During the *Batson* proceedings defense counsel attempted to rehabilitate prospective juror Hopkins, who had been excused by the State because of her work as a "brief specialist" for a well-known firm that did criminal

work. In an affidavit defense counsel stated that Hopkins had later provided the attorney with a more accurate description of the position: "Her employment was as a brief specialist, typing briefs, and her research was limited to verifying the citation of cases and statutes." Defense counsel apparently believed that the State's concern was related to the level of Hopkins' responsibility. Assuming that, we do not think that the prosecutors may now be faulted for having relied on what the venireman said at the time of *voir dire*. During *voir dire*, Hopkins stated, "As I said, I am a brief specialist. I prepare briefs, but I never had a court presentation." That remark may have given the prosecutors the impression that Hopkins played a substantive role in the preparation of briefs. In any event, the prospective juror's connection with a well-known firm doing criminal defense work was referred to by the State in excusing her from the jury, and that was, we consider, a race-neutral reason for her removal.

The prosecutors also excused one juror on the basis of her social relationships with lawyers and with a judge. During *voir dire* Ruthchurn Gillard stated that she was acquainted with a number of attorneys, including one who had become a judge and whose courtroom was across the hall from where the sentencing hearing was being conducted. The defendant argues, however, that the State retained several white veniremen who also were acquainted with lawyers or judges. The most similar instance cited by the defendant involved a woman who grew up in Wisconsin and who knew a judge in Wisconsin and a lawyer in Minnesota. We do not believe that the relationships in that case may be considered as close as the one that Gillard claimed.

The State's four other peremptory challenges to black veniremen were based mainly on the individual's age and on his or her status as a renter rather than a home-

owner. In none of these instances was an explanation for the challenge given during *voir dire*; the only explanations appearing in the record are those provided by the prosecutor at the *Batson* hearing. The prosecutor explained that Luann Jointer was challenged because she was 26 years old and a renter. Marshall Mahone was excused because he was 26 years old and a renter. Alfred Sillers was challenged by the State because he was 23 years old and lived in the vicinity where the murder occurred; Sillers rented his home. (Actually Sillers worked, rather than resided, at the location referred to by the State.) The State's final peremptory challenge to a black venireman was made to Joseph Anderson during the selection of alternate jurors. The transcript of the *voir dire* does not disclose a contemporaneous explanation for Anderson's removal, and at the *Batson* hearing the prosecutor was unable to recall why the challenge had been made. According to the *voir dire*, Anderson was 35 years old, was single, rented his home, was employed as a janitor, and had been arrested for disorderly conduct as a teenager.

The defendant notes that the State did not exclude five white veniremen who were between the ages of 19 and 26. The defendant notes further that the State did not exclude nine white veniremen who rented rather than owned their homes. Only one name appears on both lists, however, and the absence of significant overlap between the two groups lends credence to the State's claim that it preferred persons who were older or who owned their homes to persons who were both young and rented their homes. Moreover, other circumstances may have led the prosecutors not to challenge particular individuals. For example, the State points out that a white 22-year-old homeowner who was not challenged by the State had a friend who was a police officer.

In sum, we do not believe that the circuit court's decision denying the defendant's *Batson* claim was against the manifest weight of the evidence. The State provided explanations for its peremptory challenges, and the judge hearing the matter determined that they were race neutral and were sufficient under *Batson*. We have found that the record supports the State's account for its challenges, and we do not believe that the circuit court's decision was contrary to the manifest weight of the evidence.

We now consider the defendant's procedural contentions regarding the *Batson* proceedings in the circuit court. As a preliminary matter, the State asserts that the defendant has failed to preserve for review all objections to the procedures followed in the court below because defense counsel did not submit a written post-hearing motion specifying counsel's claims of error. At the conclusion of the proceedings, counsel offered to submit such a motion, but the judge ruled that a written motion was not necessary. Over the State's objection, the court then permitted counsel to make an oral motion, which was immediately denied.

We need not determine here whether a post-hearing motion is necessary to preserve claims of error in a *Batson* hearing when the hearing is conducted on remand, as it was in this case. As we have seen, defense counsel offered to file a written post-hearing motion, but the judge said that an oral motion would be sufficient. Defense counsel cannot be faulted for acting in compliance with the judge's instructions. (See *People v. Orange* (1988), 121 Ill. 2d 364, 372-73.) Accordingly, we decline the State's invitation to treat the defendant's claims of error as having been waived.

The defendant next argues that the circuit judge's ruling on the *Batson* claim was incomplete and that the cause must be remanded for the entry of specific find-

ings of fact and conclusions of law. The defendant maintains that the circuit judge failed to comply with our remand order, which directed the circuit court "to make appropriate findings of fact and conclusions of law and file those findings and conclusions with the clerk of this court."

At the conclusion of the proceedings, the circuit court made an oral ruling and entered a written order. In his oral ruling the judge stated:

> "There is no real contest as to the facts. The facts are undisputed, and so it is the Court's order and finding that the racially neutral explanations offered by the State are adequate and acceptable, and thus as to the question preemptory [sic] challenges; and thus there will be no vacator [sic] of the judgment in this case."

Defense counsel then asked the judge whether he intended to make specific findings of fact and conclusions of law in a written order. The judge replied, "The conclusion of law is based on the decision of *Batson*, obviously. And the facts are not in dispute as I view it." Defense counsel persisted, asking the judge to make specific findings with respect to each black venireman excluded by the State. The judge declined to do so, stating that there were no factual disputes warranting such a ruling. In his subsequent written order, the judge stated:

> "Applying *Batson v. Kentucky* (1986), 476 U.S. [79], 90 L. Ed. 2d 69, while noting that the facts are not in dispute and appear of record, this court does find that the statements of explanation by the People regarding their challenges are adequate and acceptable under *Batson, supra.*"

The judge's oral ruling and written order are sufficiently specific for our purposes here. The record contains the transcript of the explanations offered by the prosecutor. The judge found those explanations to be ad-

equate and race neutral, and sufficient to rebut the defendant's *prima facie* case under *Batson*. There was no further need for the trial judge to enter findings with respect to each black member of the venire excluded by the prosecution.

In a related contention, the defendant argues that the circuit judge failed to remember or consider evidence in making his decision in the *Batson* hearing. In support of this argument the defendant points to the oral statement made by the judge in ruling on the *Batson* issue, which we have already quoted. The judge said, "There is no real contest as to the facts. The facts are undisputed \*\*\*." The defendant believes that further proceedings are required because the judge, in ruling in the State's favor, mistakenly assumed that no factual disputes existed. The defendant notes that certain factual questions existed concerning the demeanor or background of individual veniremen, and that some of the reasons mentioned by the prosecutor at the *Batson* hearing for striking prospective jurors were different from, or additional to, reasons cited by the prosecutors during *voir dire*. The defendant concludes that the circuit judge's statement regarding the absence of any disputed facts indicates that the judge failed to remember or consider the parties' evidence, and disagreements, on those matters.

We do not agree that the judge's remarks should be construed in the sense suggested by the defendant. The court correctly noted that the material available to him for his consideration—including the transcript of the *voir dire*, and the juror information cards available to the attorneys during *voir dire*—were matters of record. Thus, the judge noted that there was no question raised over the number of blacks who had been excluded by the State, which the judge offered to defense counsel as an example of what he would consider to be a disputed question of fact. Although the credibility of the prosecu-

tor's explanations for his conduct at the *voir dire* was in dispute, the underlying facts were not.

The defendant next argues that the judge erred in denying his motion to compel production of the prosecutor's notes regarding jury selection. Both trial prosecutors had prepared notes during jury selection at the defendant's sentencing hearing. One prosecutor had destroyed his notes some time after the defendant was sentenced, but the other prosecutor had kept his. Defense counsel moved for production of the extant notes. The judge ruled that the notes were protected from disclosure under the work-product doctrine unless they contained material that would be considered favorable to the defense under the rule in *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. The judge inspected the notes in chambers and afterwards stated for the record that the notes did not contain material favorable to the defendant and therefore did not constitute *Brady* material. Accordingly, the court denied the defendant's motion to compel production of the prosecutor's notes.

The defendant acknowledges that the notes contained the prosecutor's opinions, theories, and conclusions, information normally protected from disclosure by the work-product doctrine. (See 107 Ill. 2d R. 412(j)(i) (in criminal proceeding, disclosure not required "of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions" of the prosecution or defense).) The defendant argues that the work-product doctrine is not applicable here because the prosecutor's opinions, theories, and conclusions were the matter at issue at the hearing.

We agree with the State that the notes in question were not discoverable material under our rules. Rule 412(j)(i), concerning work product, states:

"Disclosure under this rule and Rule 413 shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the State or members of its legal or investigative staffs, or of defense counsel or his staff." (107 Ill. 2d R. 412(j)(i).)

As the rule indicates, both the State and defense counsel are protected by the principle. To the extent that the notes might have contained statements made by the prospective jurors during their examination, disclosure was not necessary—a transcript of *voir dire* was available. (*Cf. People v. Boclair* (1987), 119 Ill. 2d 368.) Any other notation made by the prosecutor would clearly be an opinion, theory, or conclusion, and therefore would fall squarely within the protections of the work-product doctrine. Rule 412(j)(i) contains no exceptions, and we will not require one in this case. As we discuss more fully later in this opinion, a *Batson* hearing does not require trial-type procedures, such as the introduction of sworn testimony and the cross-examination of adverse witnesses. (See *People v. Young* (1989), 128 Ill. 2d 1 (op. by Ward, J.); see also *United States v. Tindle* (4th Cir. 1988), 860 F.2d 125, 130; *United States v. Garrison* (4th Cir. 1988), 849 F.2d 103, 106.) Accordingly, we decline to require disclosure of the prosecutor's notes to defense counsel. Because the notes were not subject to disclosure, there is no need that we review them here.

The defendant further argues that production of the notes became necessary in this case because the judge expressly relied on them in ruling on the *Batson* issue. In support of this contention the defendant points to the following statement in the court's written order:

"[A]fter a *prima facie* showing was made out, a further proceeding was had. At this stage the court considered and reconsidered the transcript of *voir dire*, juror card records, briefs and arguments of counsel, original trial

notes of A.S.A. Angarola regarding jury selection and all relevant and material matters."

The defendant argues that the reference to the "original trial notes" in the list of materials "considered and reconsidered" by the court signifies that the judge made use of the notes in resolving the *Batson* issue.

We do not believe that the judge's reference to the prosecutor's trial notes indicates that he relied on the notes in making his decision in this case. As we have indicated, the court denied the defendant's motion for production of the notes. In making that ruling, the court stated that the notes tended to support the State's explanations. Later, when the question of impounding the notes was raised, one of the prosecutors mentioned for the record that the judge had found that the notes were evidence favorable to the prosecution. The judge corrected counsel, commenting that the notes were simply prior consistent statements, which "are never considered favorable evidence." In light of those comments, we do not consider that the judge made use of the notes in a manner favorable to the State. The written order's reference to the notes simply reflected the earlier dispute over their production and the judge's finding that the notes did not contain material that could benefit the defendant. In this regard we also believe, however, that disclosure of the notes to defense counsel would not necessarily have been required even if the circuit judge had relied on them in resolving the *Batson* claim. Other courts have determined that, in an appropriate case, the prosecutor may be allowed to rebut a defendant's *prima facie* showing of discrimination in the use of peremptory challenges by providing an *in camera, ex parte* explanation, whether in the form of oral statements or written materials. (See *United States v. Tindle* (4th Cir. 1988), 860 F.2d 125, 131-32; *United States v. Davis* (6th Cir. 1987), 809 F.2d 1194, 1200-02; see also *United States v.*

*Tucker* (7th Cir. 1988), 836 F.2d 334, 338-40 (adversary proceedings normally, but not always, required).) Thus, the judge's use of the notes here would not have automatically necessitated disclosure of them to the defense.

The defendant next contends that the circuit judge erred in denying a defense request for appointment of an expert witness and in refusing to admit the expert's proffered testimony. The expert in question was Dr. Hans Zeisel, Professor of Law and Sociology Emeritus of the University of Chicago. According to an affidavit submitted by Dr. Zeisel, he had studied the use of peremptory challenges in capital cases in Cook County; one of the juries included in Dr. Zeisel's study was the jury chosen for the defendant's death penalty hearing. Based on his statistical analysis of the data, Dr. Zeisel concluded, "These statistics are overwhelming evidence of purposeful and systematic case-by-case racial discrimination by the prosecutors in capital cases against black defendants in Cook County during the period here at issue." The defendant was proposing the testimony in response to the State's explanations at the *Batson* hearing for its exercise of the peremptory challenges. The circuit judge denied the defendant's request, ruling that the testimony would not be helpful to him in resolving the *Batson* issue in the instant case.

Whether to allow the appointment of an expert, and to permit introduction of his testimony, are questions committed to the discretion of the trial judge. A threshold requirement for the admission of expert testimony is that the proffered testimony be of assistance to the court or jury. (See *People v. Jordan* (1984), 103 Ill. 2d 192, 208 ("It is well established that an individual will be permitted to testify as an expert if his experience and qualifications afford him knowledge which is not common to lay persons and where such testimony will aid the trier of fact in reaching its conclusion").) We cannot

conclude that the judge abused his discretion in refusing to appoint the expert and admit his testimony. As the judge noted, he did not believe that the testimony would be helpful to him in resolving the question whether the State had rebutted the defendant's *prima facie* case of discrimination under *Batson*. Dr. Zeisel did not study the State's explanations during *voir dire* for its exercise of peremptory challenges, nor did he examine, for that matter, the explanations offered by the State at the *Batson* hearing. Dr. Zeisel examined only the data concerning the race of the prospective jurors and the number of peremptory challenges used by the prosecution and defense. Thus, it appears from Dr. Zeisel's affidavit that whatever relevance the witness' testimony would have had was limited to the establishment of a *prima facie* case of discrimination by the defendant. The circuit judge had already ruled, however, that the defendant had succeeded in establishing a *prima facie* case. At the point of the proceedings at which defense counsel sought to secure the appointment and to present the expert testimony, counsel was being afforded an opportunity to respond to the explanations offered by the State for its exercise of peremptory challenges against black members of the venire. But at that point the testimony was not necessary.

The defendant also argues that the circuit judge erred in allowing the prosecutor, over defense objection, to express his reasons for the exercise of the peremptory challenges at issue in a statement to the court, without being under oath and without being subject to cross-examination. The defendant renews his argument that an evidentiary-style hearing, with sworn testimony subject to cross-examination by defense counsel, was required.

We recently rejected the same argument in *People v. Young* (1989), 128 Ill. 2d at 24-26 (op. by Ward, J.), where, as in this case, the cause had been remanded to

the circuit court, following the defendant's conviction, for a *Batson* hearing. In ruling that the prosecution was not required to present sworn testimony, subject to cross-examination, concerning its exercise of peremptory challenges following the establishment of a *prima facie* case of discrimination, we noted that *Batson* had expressly declined to impose any particular form of procedure on the lower courts, including a requirement of trial-type proceedings (*Batson*, 476 U.S. at 99 & n.24, 90 L. Ed. at 89-90 & n.24, 106 S. Ct. at 1724 & n.24). Declining to impose that requirement for such proceedings in this State, *Young* noted that attorneys, as officers of the court, are under a professional obligation to speak truthfully in their representations to a court. Moreover, we noted the difficulties attendant in imposing the dual role of advocate and attorney on trial participants. Such a requirement could be particularly burdensome if the hearing were conducted in the midst of the trial proceedings. Other courts have similarly declined to require trial-type procedures for the resolution of *Batson* claims. (See *United States v. Tindle* (4th Cir. 1988), 860 F.2d 125, 130; *United States v. Garrison* (4th Cir. 1988), 849 F.2d 103, 106.) We do not believe that it is necessary that we adopt the requirement suggested by the defendant.

Nor do we agree with the defendant that the need for trial-type procedures was particularly great in this case because the hearing was held before a judge different from the one who had presided at the defendant's sentencing hearing. The reasons we cited in *Young* in declining to require the State to present sworn testimony, subject to cross-examination, are equally applicable here. We do not believe that further procedural safeguards were required.

As a final matter, we note that during oral argument defense counsel asked us to decide whether the State made improper use of victim impact information in the

original proceedings in this case. In support of that argument the defendant has cited, as supplemental authority, *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, and *People v. Simms* (1988), 121 Ill. 2d 259. We decline to consider the additional issue, however, given the limited purpose of the present proceedings.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, September 19, 1989, as the date on which the sentence of death, previously entered in the circuit court of Cook County, is to be carried out. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 119—5). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where the defendant is currently confined.

*Judgment affirmed.*

WARD and CALVO, JJ., took no part in the consideration or decision of this case.