THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY MALONE, Defendant-Appellant.

First District (4th Division)   No. 1—87—0901

Opinion filed March 21, 1991.—Rehearing denied April 9, 1991.

Michael J. Pelletier, Linda Eigner, and Patricia Unsinn, all of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Shauna Boliker, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant was convicted of three counts of armed robbery and sentenced to three concurrent terms of 25 years' imprisonment. On appeal, he contends that this case should be remanded because the trial court failed to determine whether the State's explanations for its use of peremptory challenges excluding certain black venire persons were race-neutral so as to rebut defendant's *prima facie* case of purposeful discrimination. Defendant also contends that several prejudicial instances of prosecutorial misconduct during rebuttal closing argument denied him a fair trial.

The charges arose from a robbery which occurred on May 24, 1986, at the Paradise Lounge on West Cermak Road in Chicago. The State's case consisted primarily of the testimony of Jessie Hearron, the bartender; Margaret Brown, the owner of the lounge; and Clarence Lawrence, a regular patron and friend of Brown.

On June 11, 1986, Hearron, Brown and Lawrence viewed between 10 and 15 albums of mug shots, but did not identify anyone. The investigating officer then received five additional photographs which he showed to Brown first. She selected the photograph of defendant and said that she was pretty sure that he was the man who robbed them. The photographs were then shown to Lawrence, who was in a separate room. He too selected the photograph of defendant, stating that he looked like the robber. On June 16, 1986, the defendant was arrested and identified in a lineup as the robber by Brown and in a second lineup by Hearron.

The jury found defendant guilty of three counts of armed robbery. Following the denial of defendant's motion for a new trial and after the sentencing hearing, the trial court sentenced defendant to three concurrent terms of 22½ years' imprisonment. This timely appeal followed.

OPINION

Defendant contends that under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, this case should be remanded for a specific determination on whether the State, through its use of peremptory challenges, discriminatorily excluded three black female members of the venire from serving as jurors. He asserts that the trial court .did not determine, as *Batson* requires, whether the State's challenges to the three women were racially motivated.

■■ ■ In *Batson*, the United States Supreme Court restated the well-settled constitutional principle that the equal protection clause forbids prosecutors from engaging in discrimination against a racial group by exercising peremptory challenges of prospective jurors to exclude from the jury members of the racial group to which defendant belongs solely on account of their race. *Batson* provides defendants with recourse against such purposeful discrimination. The defendant must first establish a *prima facie* case of discrimination by showing (1) that he is a member of a cognizable racial group; (2) that the State used peremptory challenges to remove members of his race from the venire; and (3) that these facts and any other relevant facts and circumstances raise an inference of discrimination. *Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *People v. Hope* (1990), 137 Ill. 2d 430, 560 N.E.2d 849.

■ The *Batson* court did not define or enumerate what relevant facts and circumstances may be considered in determining whether the defendant has made a *prima facie* case. Illustrative examples provided by the *Batson* court and our own supreme court include whether there has been a pattern of strikes against black jurors; the prosecutor's questions and statements, if any, during *voir dire* and while exercising the challenges; whether the excluded blacks were a heterogenous group sharing race as their only common characteristic; the level of black representation in the venire as compared to the jury; and the races of the defendant, victim and witnesses. *Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *People v. Hope*, 137 Ill. 2d at 453.

■ Once the defendant establishes a *prima facie* case, the burden shifts to the prosecution to come forward with race-neutral explana-

tions for exercising its challenges against the black venire persons. (*Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *Hope*, 137 Ill. 2d 430, 560 N.E.2d 849; *People v. Mack* (1989), 128 Ill. 2d 231, 538 N.E.2d 1107.) The explanations must be related to the case being tried and must be clear and reasonably specific; however, they need not rise to a level which would warrant a challenge for cause. (*Hope*, 137 Ill. 2d 430, 560 N.E.2d 849; *Mack*, 128 Ill. 2d 231, 538 N.E.2d 1107.) The trial court then has the duty to determine if the defendant has established purposeful discrimination. *Hope*, 137 Ill. 2d 430, 560 N.E.2d 849.

Because the trial court's decision will turn largely on its assessment of credibility, the trial court's decision should be given great deference by a reviewing court. The appropriate standard of review is whether the decision of the trial judge is against the manifest weight of the evidence. *Mack*, 128 Ill. 2d 231, 538 N.E.2d 1107.

The record in the instant case reveals that the 12 jurors and two alternate jurors were selected from a venire of 24 persons. Of the 10 persons not selected, four were excused for cause, four were challenged by the State, three of whom were black, and two were challenged by the defense. The record does not disclose the racial composition of the 24-person venire, but it appears from discussions at trial and arguments in the briefs that of the 18 jurors not excused for cause or by the defense, a total of seven (four who served as jurors and three peremptorily challenged by the State) were black.

Upon the State's peremptory challenge of the third black woman, defense counsel moved for a mistrial, arguing that the prosecution was systematically excluding black jurors. The State responded that a *prima facie* case of purposeful discrimination had not been made due to the fact that three black persons had already been accepted by the State to serve on the jury. The trial court asked the prosecutor if he was prepared to provide a race-neutral explanation for each of the black women challenged. The prosecutor responded, "[o]nly if your Honor rules there has been a *prima facie* case made." Without requiring the defense to show, in addition to the facts that defendant is black and that three black women were challenged by the State, any other relevant facts and circumstances raising an inference of purposeful discrimination, the trial judge stated "[t]here is a *prima facie* case." The court then asked the prosecutor to give his reasons for excusing the three black women venire members, Crawford, Cameron and Norris.

As to venire member Norris, the third of the three black women excluded, the prosecutor stated that his challenge of her was based on

the fact that she had once testified on behalf of the defense in a murder trial. The trial court responded "[A]ll right."

The prosecutor then noted that Crawford stated that she read the Bible every day. He pointed out that another prospective juror had been excused for cause on the basis of religious convictions which, the man said, prevented him from being involved in the possible taking away of another's freedom. The prosecutor stated that he felt that Crawford's religious beliefs might similarly influence her. He also noted, and the trial court acknowledged, that she indicated she did not want to serve.

Regarding Cameron, the prosecutor stated that she was challenged because she had a lawsuit pending in Cook County. The record reveals that earlier, the prosecutor had requested in a side bar that she be excused for cause, noting that the pendency of a lawsuit is one of the statutory bases for challenge of a juror. The statute to which the prosecutor referred states that "[i]t shall be sufficient cause of challenge of a petit juror *** that he is a party to a suit pending for trial in that court." (Ill. Rev. Stat. 1985, ch. 78, par. 14.) The trial judge denied the State's request to excuse the juror for cause on the basis of her suit, and the State thereafter exercised a peremptory challenge to excuse her.

After the State's enunciation of its reasons for excluding the three black women, the court stated, "Given the fact that there have been three black jurors accepted, who will serve on this jury, we will accept the neutral explanations tendered by the State." Jury selection proceeded during which a fourth black person of unknown gender was selected to serve as a juror.

Defendant argues that the above-quoted statement by the trial court establishes that his motion for a mistrial was not denied on a finding that the prosecutor's explanations for challenging the three women were race-neutral but, rather, on the erroneous basis that at the time the motion was made three black persons had already been accepted as jurors. Defendant maintains that under *Batson*, the issue was not whether the State did *not* discriminate against the black jurors who served or based upon the ultimate racial composition of the jury, but whether the State purposefully discriminated against the three black women it challenged.

■ *Batson* does not require the total exclusion of a racial group from the jury in order to prove discrimination (*People v. Seals* (1987), 153 Ill. App. 3d 417, 505 N.E.2d 1107). On the other hand, *Batson* does not depart from the principle enunciated in *Strauder v. West Virginia* (1880), 100 U.S. 303, 25 L. Ed. 664, that a defendant has no

right to a jury composed in whole or even in part of his own race. Defendant claims, however, that the record does not show that the trial court made an assessment of whether the prosecutor's explanations for his challenges were race-neutral but, instead, shows that the trial judge found that the inclusion of blacks on the jury relieved him of the duty to scrutinize the prosecutor's explanations at all.

■ Defendant's claim is at odds with the trial court's ruling that a *prima facie* case had been made. The court found that defendant had presented a *prima facie* case of discrimination even though (1) the defendant did not enunciate, nor did the court request, any "relevant circumstances" other than defendant's race and the three State challenges of blacks, and (2) the court was aware prior to making its ruling that three blacks had been accepted as jurors. Defendant does not offer and we find no explanation as to why the court ruled that a *prima facie* case had been made and would then require the prosecution to articulate the reasons for its challenges if the judge "found that the inclusion of black jurors relieved him of the duty to scrutinize" those explanations. Had the court determined that the acceptance of three black persons for that portion of the jury already selected negated defendant's claim of purposeful discrimination, there would be no need for the court to then require the prosecutor to state his reasons for excluding the three black women peremptorily challenged.

We also note that after the prosecutor stated that one of the women challenged had testified as an eyewitness for the defense in a murder trial, the court responded "[A]ll right." Similarly, when the prosecutor pointed out that the juror whom he felt might be influenced by religious beliefs had also indicated that she did not want to serve, the court confirmed "[s]he is the one who said she did not want to serve." Both of these remarks serve as further support for the conclusion that the trial court properly evaluated the State's explanations and found them to be credible and race-neutral. It was not necessary for the trial judge to make a specific finding on each of the challenge explanations. *People v. Mack* (1989), 128 Ill. 2d 231, 538 N.E.2d 1107.

Further, while placing great emphasis on the first phrase of the court's statement, *i.e.*, "given *** that there have been three black jurors accepted," defendant virtually ignores the very next phrase in which the court specifically states that the explanations were "neutral." Defendant also overlooks the fact that the trial court reiterated, at the hearing on defendant's post-trial motion relative to the *Batson* issue, that "[t]he State placed of record a neutral explanation." In contrast to defendant's interpretation, we interpret the trial judge's

statement expressly noting that three persons had already been accepted as jurors to have been an additional reason, not the sole reason, for his denial of defendant's motion for a mistrial on the ground of purposeful discrimination of black venire members.

■ Moreover, having read the transcript of the *voir dire*, we are of the opinion that .the denial of defendant's motion was not against the manifest weight of the evidence. As noted earlier, the record does not reveal the exact racial composition of the 24-person venire. However, it appears from the dialogue at the hearing on defendant's *Batson* motion for a mistrial and his post-trial motion for a new trial, as well as the arguments in the parties' briefs, that of the 18 persons not excused for cause or by the defense, 7 of the 18 venire members, or approximately 33%, were black. Four black persons were retained as jurors, resulting in 33% of the jury being comprised of black persons. We have previously recognized that the inclusion of black jurors is not, standing alone, sufficient to overcome a *Batson* claim. However, as also stated earlier, factors which may be considered by the trial court include whether there has been a "pattern of strikes" against black persons and the number of black persons in the venire as compared to the number selected as jurors.

■ Our review of the *voir dire* proceedings indicates that the trial court's finding that the State's explanations were "neutral" was not erroneous. Venire member Crawford stated that she lived alone; that except for her job, she rarely left her home or had visitors and that when not working, her primary activities were daily exercise and reading "The Word" and the Bible. Prior to the exercise of any challenges of the panel on which she sat, she also requested that the court excuse her from jury service for reasons relating to her job. It should be noted that the fourth venire member excused by the State was a white woman who lived alone, was near graduation from a theological seminary after which, she stated, she would be assigned as a parish minister and that her primary activities were editing the seminary's newspaper and reading ministry-related materials. Another venireman, of unknown race, was excused for cause on the basis of his religious convictions. Thus, even disregarding that Crawford, the black woman, expressly asked to be excused, all three of the venire members who shared the characteristic of religion playing a major role in their lives were excused.

The trial court's assessment of the credibility and race-neutrality of the State's explanations is entitled to great deference on review. From our review of the *voir dire* proceedings, we cannot say that the court's acceptance of the State's explanations as neutral and the

court's denial of defendant's motion for a mistrial pursuant to *Batson* were against the manifest weight of the evidence.

Defendant also contends that repeated instances of prosecutorial misconduct during rebuttal argument were so prejudicial as to have denied him a fair trial. Defendant argues that during his summation, the prosecutor (1) minimized the State's burden of proof; (2) improperly bolstered the credibility of the State's witnesses; (3) misstated the law; (4) disparaged defense counsel; and (5) introduced inadmissible demonstrative evidence.

■■ Prosecutorial misconduct may be a ground for reversal. (*E.g.*, *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298.) However, a prosecutor is allowed wide latitude in closing argument as long as his comments are based on the evidence or reasonable inferences from the evidence. (*People v. Piscotti* (1985), 136 Ill. App. 3d 420, 483 N.E.2d 363.) Moreover, it is well settled that improper prosecutorial remarks generally do not warrant reversal unless they are so prejudicial as to constitute such a material factor in defendant's conviction that the jury likely would have reached a contrary verdict had the remarks not been made. (*People v. Townsend* (1985), 136 Ill. App. 3d 385, 483 N.E.2d 340.) Further, defendant may not claim such prejudice where the comments complained of were provoked or invited by comments or arguments of defense counsel. (*Piscotti*, 136 Ill. App. 3d 420, 483 N.E.2d 363.) Finally, each case must be decided on its own facts. *Townsend*, 136 Ill. App. 3d 385, 483 N.E.2d 340.

Defendant first argues that the State minimized its burden of proof. Defendant asserts that because the State's case consisted almost entirely of the testimony of the three eyewitnesses/victims, it was necessary for his counsel to attempt to discredit their testimony and cast doubt on their identifications of defendant as the offender by arguing that the lighting in the tavern was poor and that the victims were in a state of extreme fear. In rebuttal argument, the prosecutor responded:

> "What are we supposed to do? Close up the courtroom? We won't try any more violent cases anymore. We won't try armed robberies or murder."

Defendant's objection to these remarks was overruled. The prosecutor continued:

> "Because victims are too frightened. They cannot remember what the guy's face looks like. Maybe we should all go home, close the courtroom. It is nonsense."

Regarding the lighting, the prosecutor said:

"What are we going to tell the citizens of Chicago? That if you go into a tavern, you can't be a victim of a crime because you won't be able to identify anybody?

[Defense counsel's objection was again overruled.]

What they are telling you is nonsense. You can't be the victim of a crime because it is too dark?"

Defendant maintains that the plain meaning of the State's "sarcasm" is clear, *i.e.*, that persons accused of violent crimes cannot be acquitted merely because eyewitness identifications might be inaccurate, and "[t]hus, by implication, the State need not prove beyond a reasonable doubt the only evidence it has presented—the identification of defendant as the offender."

■■■ We find no merit in defendant's argument. First, a reading of the arguments of counsel discloses that the assistant State's Attorney opened his rebuttal argument by acknowledging that the State's burden is proof of guilt beyond a reasonable doubt and later argued that the evidence established defendant's guilt beyond a reasonable doubt. We do not read the comments complained of by defendant as suggesting otherwise. Defendant's theory of the case was that he was mistakenly identified. He attempted to cast doubt on the witnesses' ability to positively identify the offender by emphasizing the fear the witnesses acknowledged experiencing during the robbery and the fact that the tavern was not well lighted. He pointed out that Brown had testified that the tavern was "pretty well lit for a lounge," and then restated, "It probably was pretty well lit for a lounge." The implication, of course, was that lounges are generally dimly lit. In our view, the remarks of the prosecutor were invited by defense counsel and were intended to rebut defense counsel's theory. The gist of the prosecutor's comments was that simply because the scene of a crime may be dim or dark and because victims of violent crimes are afraid do not render them incapable of making positive or accurate identifications.

It is also noteworthy that defense counsel stated, approximately seven times during his closing argument, that the prosecution's burden in this case was proof beyond a reasonable doubt. At one point, he characterized the State's burden as "the highest legal standard known to civilized man." In light of defense counsel's repetition of the State's burden of proof, the prosecutor's own statements acknowledging its burden and the instructions given by the court, the jury was well aware that the State was required to prove defendant guilty beyond a reasonable doubt.

■■■ Defendant argues that the State further minimized the burden of proof by stating that the defendant was guilty unless the wit-

nesses were lying. Defendant cites *United States v. Vargas* (7th Cir. 1978), 583 F.2d 380, and *People v. Cole* (1980), 80 Ill. App. 3d 1105, 400 N.E.2d 931, for the principle that it is error for a prosecutor to argue that an acquittal is equivalent to a declaration that the State's witnesses have lied. In each of those cases, the prosecutor advised the jury that to convict the defendant, the jurors had to find that the witnesses were lying.

No such comments were made in the case at bar, and the remarks which defendant complains of were clearly invited by defense counsel. In his closing argument, defense counsel made the following remarks:

> "[The State's witnesses] didn't get up on the witness stand and lie to you. We are not saying that they are liars. They made an honest mistake. They are human beings and people make mistakes."

After further comments on the circumstances of the robbery, defense counsel stated:

> "It is only natural for these people—who again are not lying. They are convinced in their own minds that they are accurate— to try to make their testimony better.
> * * *
> Witnesses are trying to make the situation better for themselves."

In rebuttal argument the prosecutor responded:

> "[Defense counsel] says, well the witnesses are not lying. The witnesses are not lying, but, well, they are making their testimony better. See they [the defense] want to have it both ways. They are nice people and they are not lying, but they are making their testimony better.
> How do you make your testimony better? You lie. Either they [the defense] are saying they are lying or they are not. We know they are not lying."

In making these comments the prosecutor was directly responding to defense counsel's argument that the witnesses were "making their testimony better." At no time did the prosecutor state that, in order to acquit defendant, the jury had to find that the State's witnesses were lying. We see no misconduct in the above-quoted remarks.

Defendant also argues that it is improper for the prosecutor to personally vouch for the credibility of the witnesses. (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217.) He maintains that the prosecutor's statement, that "[w]e know they are not lying," and a later remark that the State's witnesses were "honest, decent people" who were willing to testify were improper.

Although we agree that generally it is improper to vouch for the credibility of witnesses, comments on the strength of the evidence are permitted. (*People v. Emerson* (1987), 122 Ill. 2d 411, 522 N.E.2d 1109.) In *Emerson*, the supreme court held that the prosecutor's statement that "we know [a named witness] was telling you the truth," made on at least two separate occasions, was a fair comment on the evidence and did not amount to a personal opinion of the prosecutor. In so ruling, the court noted that the prosecutor went on to point out that the witness' testimony was corroborated by that of a defense witness.

In contrast, in *Valdery*, cited by defendant, among several other improper remarks found to require reversal, the prosecutor stated:

" '*** [I]n my mind *** the equality [*sic*] and integrity of the three witnesses *** have never been higher. I have never had contact with people who have come forth and testified as witnesses who have had the level of integrity and character of those people and I'm particularly impressed. ***. They have shown to me a high level of responsibility coming forth and testifying as they have and I hope that you're as impressed with them as I have been.' " (Omissions in original.) *Valdery*, 65 Ill. App. 3d at 378.

The instant case is clearly distinguishable from *Valdery*. Here, the entire summation by the prosecutor concerned the strength of the State's case presented through the clear and consistent testimony of the victims as to what occurred on the night of the offense and their positive identification of defendant as the offender. As in *Emerson*, the prosecutor's brief and isolated remarks were fair comments on the strength of the evidence and did not amount to the prosecutor personally vouching for the credibility of the witnesses. Moreover, we note that defense counsel himself stated on a number of occasions that the State's witnesses were not lying. Finally, we do not believe that the jury interpreted the prosecutor's use of the plural word "we" as a reference to the State's Attorney's office but, rather, to the jurors themselves. *Cf. People v. Leverston* (1985), 132 Ill. App. 3d 16, 37, 476 N.E.2d 1344.

Defendant next asserts that the prosecutor prejudiced defendant by disparaging defense counsel. His entire argument on this point is that the prosecutor labeled defense counsel's arguments as "speculation." Once again, it is necessary to review defense counsel's argument. As is acknowledged, the focus of his entire argument was to interject doubt as to defendant's guilt. In addition to arguing that the eyewitnesses were mistaken, he argued that the State did

not produce physical evidence to corroborate their testimony. He pointed out that the State did not produce evidence of defendant's fingerprints on the bar or cash register and that the police did not recover a weapon, wallet or purse from defendant when they arrested him.

Concerning the lack of fingerprints, the prosecutor noted that the robbery was in a tavern patronized by many people and stated:

"They are trying to take your mind away from what is crucial in this case."

In response to defense counsel's argument regarding the failure of the police to recover any of the items taken in the robbery, the prosecutor noted that defendant was not arrested until three weeks after the crime. He later stated:

"What you are concerned with in this case is the evidence in this case, what you hear from the witness stand, *** not the speculations of [defense counsel]."

Defendant's objection was properly overruled. There was nothing improper about the comments nor did they disparage defense counsel. (See *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357.) The cases cited by defendant, involving blatant attacks on defense counsel and accusations of lying and trickery, are clearly inapposite to the case before us.

Defendant's final claim of prosecutorial misconduct is that the prosecutor "reenacted the robbery" and thereby introduced inadmissible demonstrative evidence which misled the jury. From our reading of the argument, it appears that as the prosecutor summarized the witnesses' testimony concerning their ability to observe and identify defendant, he demonstrated, without objection from defense counsel, the distances each of the witnesses had testified they were from the defendant as he moved about during the robbery.

██ Admission of demonstrative evidence is within the discretion of the trial court. No abuse will be found if the demonstration was based on evidence at trial. (*People v. Bush* (1981), 103 Ill. App. 3d 5, 430 N.E.2d 514.) In the instant case, defendant did not object to the demonstration. Further, defendant states in his brief: "The prosecutor walked the jurors through the testimony of the witnesses." In reading the prosecutor's chronological review of the events of the robbery, we find nothing in the review which was not testified to by the witnesses.

In summary, we hold that the prosecutor's remarks in rebuttal argument were generally proper or were invited by defense counsel. Further, in light of the overwhelming evidence of defendant's guilt,

we do not believe that any of the comments of which defendant complains were a material factor in defendant's conviction.

For the reasons stated, defendant's conviction is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.