THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARRELL CANNON, Defendant-Appellant.

First District (4th Division)   No. 1—89—1685

Opinion filed March 19, 1992.

Randolph N. Stone, Public Defender, of Chicago (Bruce Landrum, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Kathleen F. Howlett, Special Assistant State's Attorney, and Renee Goldfarb and Lisa Goldsand, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

On remand, the circuit court of Cook County held a *Batson* hearing subsequent to the jury trial of defendant, Darrell Cannon. The trial court ruled that the State did not use its peremptory challenges during *voir dire* to exclude black venirepersons from the jury. Defendant appeals, claiming that the trial court's ruling was against the manifest weight of the evidence.

We reverse and remand for a new trial.

BACKGROUND

Following a jury trial, defendant was convicted of murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2)), based on accountability. The trial judge sentenced defendant to the penitentiary for a term of natural life.

On appeal, this court affirmed defendant's conviction and sentence. However, we remanded the cause to the trial court for a *Batson* hearing. *People v. Cannon* (1986), 150 Ill. App. 3d 1009, 502 N.E.2d 345.

Our first *Cannon* opinion was filed on December 11, 1986. Both defendant and the State petitioned the Illinois Supreme Court for leave to appeal. On May 1, 1987, our supreme court retained jurisdiction over the cause and directed the trial court, as we did, to conduct a *Batson* hearing. 115 Ill. 2d 544.

The supplemented record contains the following facts. During the *voir dire* in defendant's trial, a total of 67 venirepersons were questioned. The trial judge excused 16 venirepersons for cause. Of the remaining 51 venirepersons, 17, or 33%, were African-American.

The prosecutor exercised 17 peremptory challenges to exclude venirepersons from the jury. Of that number, 14 were African-American. The record further identifies three African-Americans whom the State accepted as jurors, constituting 25% of the jury. The trial judge found that defendant established a *Batson prima facie* case. The trial judge based its finding solely on the fact that 14 of the 17 venirepersons excluded by the State were African-American.

The State proffered race-neutral reasons for its exercise of peremptory challenges. In an order dated July 30, 1987, the trial judge accepted the State's explanation. The court ruled that defendant failed to establish that the State engaged in purposeful discrimination during *voir dire*.

On April 5, 1989, the Illinois Supreme Court denied defendant's and the State's petitions for leave to appeal. (125 Ill. 2d 568.) Our supreme court also ordered that our 1986 *Cannon* decision be effectuated. On June 27, 1989, the trial court adopted, *nunc pro tunc*, its July 30, 1987, order. It is from that order that defendant now appeals.

OPINION

The ramifications of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, continue to be realized. (See, *e.g.,* *Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859; *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364.) However, this court has thoroughly discussed *Batson's* general framework in several recent cases. (*E.g.,* *People v. Lovelady* (1991), 221 Ill. App. 3d 829, 582 N.E.2d 1217; *People v. Johnson* (1991), 218 Ill. App. 3d 967, 578 N.E.2d 1274.) We need not repeat those discussions here.

I

The State initially argues that defendant failed to establish a *Batson prima facie* case. (See *Lovelady*, 221 Ill. App. 3d at 837, 582 N.E.2d at 1224.) The State refers to the trial court's order, in which the court found that defendant established a *Batson prima facie* case based solely on the fact that 14 of the 17 venirepersons whom the prosecutor excluded were African-American.

■ It is true "that a *Batson prima facie* case cannot be established merely by the numbers of black venirepersons stricken by the prosecution." (*Lovelady*, 221 Ill. App. 3d at 837, 582 N.E.2d at 1224-25.) However, "[s]ince the prosecutor in the case at bar submitted an explanation for his exercise of peremptory challenges, the question of

whether defendant established a *Batson prima facie* case is moot. Consequently, we turn to the question of whether the prosecutor's explanation was race-neutral." *Lovelady*, 221 Ill. App. 3d at 838, 582 N.E.2d at 1225.

## II

Defendant claims that the prosecutor who represented the State at the *Batson* hearing on remand proffered an explanation that was pretextual or contrived. (See *Lovelady*, 221 Ill. App. 3d at 839, 582 N.E.2d at 1226.) Viewed from either of two independent and equally fatal aspects, we agree with defendant and conclude that the State's explanation was not "clear, legitimate, trial-specific, and race-neutral" as required by *Batson*. See *Lovelady*, 221 Ill. App. 3d at 838, 582 N.E.2d at 1225, citing *Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1723-24.

## A

■ Defendant offers rebuttal to the prosecutor's explanation for each of the 14 black venirepersons excluded. However, the exclusion of even one venireperson on the basis of race is unconstitutional and requires reversal of the conviction. (*People v. McDonald* (1988), 125 Ill. 2d 182, 200, 530 N.E.2d 1351, 1359.) After carefully reviewing the record, we conclude that the State's explanation for the exclusion of at least two venirepersons was pretextual.

The third black venireperson for whom the State proffered an explanation was Marie Mitchell. The trial judge's questioning and Mitchell's jury card adduced the following facts. At the time of the *voir dire*, Mitchell was 71 years old and a retired maintenance worker. Her late husband had worked for 31 years in the Gary, Indiana, steel mills. She had three daughters: the eldest was a "white collar" employee at a publishing company; the next oldest was a postal worker; and the youngest was unemployed. Approximately 10 years prior to *voir dire*, Mitchell had been the victim of a purse-snatching; she was not injured and there was no arrest. She had no prior jury service and she did not know anyone who worked in the criminal justice system. The prosecutor at *voir dire* excused Mitchell without asking her any questions.

At the *Batson* hearing, the State gave three reasons for excluding Mitchell from the jury. These reasons were inadequate. The first reason was simply that Mitchell was 71 years old. However, the State accepted five white venirepersons of retirement age. "A prosecutor's use of [a race-neutral explanation] to exclude black venirepersons is

not race-neutral if the State retains white venirepersons having that same trait and there is nothing else that distinguishes the retained white venirepersons from the excluded black venirepersons." *Lovelady,* 221 Ill. App. 3d at 839, 582 N.E.2d at 1226; see *McDonald,* 125 Ill. 2d at 199-200, 530 N.E.2d at 1358-59.

The State's second reason for excluding Mitchell was that, 11 years prior to *voir dire,* Mitchell had moved out of public housing, where she lived for an unspecified period of time. To the prosecutor at the *Batson* hearing, this fact indicated "that at least one point in time she was taking from the community rather than putting into the community." The State fails to explain, and we doubt if the State could explain, how living in public housing, 11 years prior to *voir dire,* made Mitchell an unsuitable juror for that particular trial. The explanation was hardly clear, legitimate, and trial-specific as *Batson* requires. (See *Lovelady,* 221 Ill. App. 3d at 838, 582 N.E.2d at 1225.) Indeed, the remark is absurd at best and grossly stereotypical at worst. We condemn such a remark and disregard it without further discussion.

The State's third reason for excluding Mitchell was that one of her three daughters was unemployed and approximately defendant's age. The prosecutor at the *Batson* hearing explained that "[a]ny sympathy she may feel towards her unemployed thirty-six-year-old daughter she may express towards the defendant in this matter." This reason fails because the State accepted other venirepersons who either were unemployed themselves or had offspring who were unemployed young adults. (See *McDonald,* 125 Ill. 2d at 199-200, 530 N.E.2d at 1358-59.) We conclude that the State's explanation for Mitchell's exclusion was pretextual.

The sixth black venireperson for whom the State offered an explanation was Stella Wilson. The trial judge's questioning and Wilson's jury card adduced the following facts. At the time of *voir dire,* Wilson was 69 years old and a retired hotel seamstress. Her late husband worked for Swift and Company. She had three adult children: two sons and one daughter. The eldest son was a postal worker; the next oldest son was a minister; and the daughter was a hospital statistician. Wilson had never been a victim of crime and she did not know anyone who worked in the criminal justice system. She had served on a jury in a murder trial 10 to 12 years prior to the *voir dire.* As with Mitchell, the prosecutor at *voir dire* excused Wilson without asking her any questions.

The State gave two inadequate reasons for excluding Wilson from the jury. The first reason was simply that Wilson was 69 years old.

This reason is as pretextual for Wilson as it is for Mitchell. See *Mc-Donald*, 125 Ill. 2d at 199-200, 530 N.E.2d at 1358-59.

The State's second reason for excluding Wilson was that one of her children was a minister. The prosecutor at the *Batson* hearing noted that the State planned to seek the death penalty. Thus, the *Batson* hearing prosecutor explained that the *voir dire* prosecutor "did not feel it would be appropriate to keep a person on the jury who had a strong religious background as indicated by the fact that her son was a minister."

This reason fails for not being trial-specific. (See *Lovelady*, 221 Ill. App. 3d at 838, 582 N.E.2d at 1225.) Indeed, this reason contains an obvious double assumption that is quite unrelated to this particular trial. It firstly assumes that Wilson herself had "a strong religious background." However, the fact that one of her offspring is a minister indicates nothing. This reason secondly assumes that religious people would be less likely to impose capital punishment in this particular case. Neither assumption was explored by any questions from the prosecutor. Indeed, no venireperson was questioned on the existence or strength of any religious affiliation.

We additionally note that the subject of capital punishment in the context of this trial is particularly specious. The record shows that none of the venirepersons were told that the State would seek the death penalty. Further, the trial judge directed that the jury would be questioned on the death penalty (see *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770) after the trial, if it became necessary. Thus, at the time of *voir dire*, whether or not defendant's trial was a capital case was quite irrelevant.

We conclude that the State gave inadequate reasons for the exclusion of both Mitchell and Wilson from the jury. We hold that the trial judge's finding to the contrary was against the manifest weight of the evidence. This requires us to reverse defendant's conviction and remand the cause for a new trial.

### B

We see the inadequacy of the State's explanation for its use of peremptory challenges from a second and equally fatal aspect. Prior to giving his explanation, the prosecutor at the *Batson* hearing related to the trial judge comments by the prosecutor at *voir dire*. The comments described an overall design or plan in conducting the *voir dire*. The *Batson* hearing prosecutor stated:

> "[The prosecutor at *voir dire*] indicated to me that at the time of jury selection it was his belief that the defense theory

would be one of accountability, that the defendant did not realize what was going to happen and he was just along.

[The prosecutor at *voir dire*] felt that based on that theory, he did not want any sympathy or he wanted responsible people sitting on the *** jury. People who had roots in the community. People who would be able to see through what the defense had to say at that point.

Your Honor, he wanted homeowners. He wanted people who were employed. He wanted people with roots in the community."

The prosecutor at the *Batson* hearing used this rationale to explain the wholesale exclusion of various classes of venirepersons.

Illinois courts have reiterated *Batson*'s requirement that a prosecutor's explanation for his use of peremptory challenges not only be race-neutral, but also clear, legitimate, and trial-specific. (See, *e.g.*, *Lovelady*, 221 Ill. App. 3d at 838, 582 N.E.2d at 1225, citing *Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1723-24.) The wholesale exclusion of venirepersons based on classifications, albeit race-neutral classifications, without trial-specific reasons, is forbidden.

The United States Supreme Court condemned this practice over 40 years ago. In *Thiel v. Southern Pacific Co.* (1946), 328 U.S. 217, 90 L. Ed. 1181, 66 S. Ct. 984, the Court was presented with the exclusion of all venirepersons who worked for a daily wage. However, the following words apply to all class-based exclusions of venirepersons:

"The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. [Citations.] This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. *Jury competence is an individual rather than a group or class matter*. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury." (Emphasis added.) (328 U.S. at 220, 90 L. Ed. at 1184-85, 66 S. Ct. at 985-86.)

Indeed, even the dissent in *Thiel* agreed with the above principles. "The process of justice must of course not be tainted by property prejudice any more than by race or religious prejudice." 328 U.S. at 226, 90 L. Ed. at 1188, 66 S. Ct. at 988 (Frankfurter, J., dissenting).

■ The record reveals the pernicious effect of the prosecutor's class-based exercise of his peremptory challenges. For example, the fifth venireperson for whom the State offered an explanation was Claire Sexton. The trial judge's questioning and Sexton's jury card adduced the following facts. At the time of *voir dire*, Sexton was 65 years old. She was a renter at her current address for 21 years. She was employed as a housekeeper at a local university and had worked there for 15 years. Sexton was separated from her husband, who was a janitor. She did not have any children. Sexton had never been a victim of crime and she did not know anyone who worked in the criminal justice system. She had previously served on two juries, one civil and one criminal. As with Mitchell and Wilson, the prosecutor at *voir dire* excused Sexton without asking her any questions.

The State gave three inadequate reasons for excluding Sexton from the jury. One reason simply was that Sexton was 65 years old. This reason is as pretextual for Sexton as it is for Mitchell and Wilson. See *McDonald*, 125 Ill. 2d at 199-200, 530 N.E.2d at 1358-59.

A second reason proffered by the State for excluding Sexton was that she worked at a university. The prosecutor at the *Batson* hearing explained that "[u]niversity individuals tend to be more liberal in certain areas than other people."

The State relies on *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357, where the prosecutor at the *Batson* hearing on remand explained that he excluded a venireperson because he was a teacher and, further, that he generally excused schoolteachers. The prosecutor stated that teachers tend to be sympathetic, to give individuals the benefit of the doubt, and to go beyond the law and other restrictions placed upon them when they serve as jurors. 129 Ill. 2d at 178-79, 544 N.E.2d at 381.

The *Harris* court, however, focused solely on the singular employment background of that particular juror. The court did not express a blanket, class-based opinion of all teachers. (129 Ill. 2d at 180, 544 N.E.2d at 382.) Further, in the case at bar, Sexton was not even a teacher; she was a housekeeper. Thus, this impermissible, class-based stereotype does not even apply to Sexton.

A third reason proffered by the State for excluding Sexton was that she was a renter. Apparently, the prosecutor at the *Batson* hearing did not consider Sexton to have, using his words, "roots in the

community," solely because she rented her residence of 21 years rather than owned it.

The State attempts to base its wholesale exclusion of renters on *People v. Mack* (1989), 128 Ill. 2d 231, 538 N.E.2d 1107. In *Mack*, the prosecutor at the *Batson* hearing on remand explained that the State excluded four venirepersons because they were both young and renters. Our supreme court considered that particular combination of traits to be an adequate explanation in that particular case. 128 Ill. 2d at 242-44, 538 N.E.2d at 1113.

However, the venirepersons in *Mack* were not excluded based solely on their status as renters. Further, *Mack* does not indicate that the State exercised its peremptory challenges in such a class-based, wholesale, and systematic manner as in the case at bar. We hold that the State's exclusion of Sexton, based on these class-based and stereotypical perceptions, was impermissible. The trial judge's finding that these explanations were adequate was against the manifest weight of the evidence.

A cursory review of the record shows that some of the reasons proffered by the *Batson* hearing prosecutor to explain the exclusion of several particular venirepersons were pretextual. Additionally, some of the reasons were based on impermissible class-based exclusions of venirepersons. Defendant's conviction must be reversed and the cause remanded for a new trial.

We lastly note that we believe the evidence at trial was sufficient for the jury to conclude that defendant was guilty beyond a reasonable doubt. This is not a finding as to defendant's guilt or innocence that would be binding on retrial. Rather, our consideration of the sufficiency of the evidence removes the risk of subjecting defendant to double jeopardy. *People v. Taylor* (1979), 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

JOHNSON and McMORROW, JJ., concur.