THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH GASTON, Defendant-Appellant.

First District (1st Division)    No. 1—91—0544

Opinion filed December 13, 1993.

Barbara Kamm, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Christine Perille, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal on remand of *People v. Gaston* (1992), 227 Ill. App. 3d 486, 592 N.E.2d 131, in which we found that defendant had established a *prima facie* case of discrimination in the selection of his jury. We ordered the trial court to conduct a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, to determine whether the State had race-neutral explanations for using four of five peremptory challenges to strike African-Americans from Gaston's jury venire. Defendant had been convicted of the armed robbery of a paint store in Chicago. Although defendant admitted his involvement in the robbery in a statement given to police following his arrest, we are required by *Batson* to reverse the conviction and remand this case for a new trial.

Under *Batson* (476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723-24), once a defendant has established a *prima facie* showing of discriminatory peremptory exclusion, the burden shifts to the State to articulate race-neutral reasons for excluding prospective minority jurors. A defendant must be granted a new trial if the prosecution

excludes even one prospective juror on the basis of race. (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723-24.) Whether the State has met its burden is a question of fact, turning largely on credibility, and, therefore, a trial judge's *Batson* findings will not be disturbed unless against the manifest weight of the evidence. (*People v. Baisten* (1990), 203 Ill. App. 3d 64, 77, 560 N.E.2d 1060.) Here, after the hearing, the trial judge made no specific findings other than to conclude that the State's reasons for excluding the four prospective jurors were race-neutral. Based on our review of the record, at least two of the four jurors at issue here were excluded for inappropriate reasons. We address each juror in turn.

### (1) LEROY HEMINGWAY

The prosecution's proffered reason for excluding Hemingway related to his responses to several questions about his children and what they were doing and where they were employed. Hemingway did not know. Furthermore, the prosecutor stated that Hemingway was "blase" in answering questions and seemed "bored" by the proceedings. This led the prosecutor to conclude that Hemingway might not be attentive during trial. These are race-neutral reasons for peremptory exclusion (see *People v. Powell* (1991), 224 Ill. App. 3d 127, 132, 586 N.E.2d 589), and defendant concedes as much.

### (2) ANNETTE WILLIAMS

The prosecution offered several reasons for excluding Annette Williams. The prosecution was concerned because Williams was the same age as defendant and was single. We consider these to be race-neutral reasons, particularly here, where almost all of the jurors impanelled were married and had children. (*Baisten*, 203 Ill. App. 3d at 79.) Second, the prosecutor stated that he had noticed Williams looking at defendant in what he perceived to be a "sympathetic manner." Exclusions on the basis of demeanor are fraught with the potential for abuse and use as a subterfuge for racial discrimination (*People v. Young* (1989), 128 Ill. 2d 1, 20, 538 N.E.2d 453; *Baisten*, 203 Ill. App. 3d at 79); however, we will generally rely on the trial judge's determination in such cases because exclusion due to a venireperson's demeanor forms the historical basis of the peremptory system. (*Baisten*, 203 Ill. App. 3d at 80.) We cannot, absent some specific attack on the trial judge's finding, say that it was clearly erroneous.

Finally, the prosecutor offered that Williams, who had earned two master's degrees, was far more educated than the other members of the jury and thus would not fit in. As defendant notes, Gaston's jury did not consist of mostly "working-class" types, as the prosecutor

contended. Rather, there were several members of the panel who had earned not only college degrees, but graduate degrees as well. One juror was nearing his doctorate; another had an MBA and another a master's degree. However, we cannot say, given the totality of reasons offered for Williams' dismissal, that the prosecutor acted in a discriminatory manner regarding this prospective juror. The exclusion of Williams was not a violation of *Batson*.

### (3) DOROTHY MAE DIXON

The prosecution's primary reason for excluding Dixon was that her son, age 26, and husband were both unemployed at the time of trial. The prosecutor stated that this might make her sympathetic to defendant's decision to commit a robbery. The prosecutor also intimated that Dixon might be sympathetic to Gaston because he was unemployed when he committed the crime:

> "I think it's common knowledge that some people are of the opinion that when people are in a financial condition where they're unemployed and they commit a crime, there is a reasoning out there that somehow that justifies the crime that they commit."

Although the unemployment of a prospective juror is considered a race-neutral reason for excluding a venireperson (*People v. Mack* (1989), 128 Ill. 2d 231, 241, 538 N.E.2d 1107), in *People v. Powell* (1991), 224 Ill. App. 3d 127, 134, this court emphatically held that "the unemployed status of [a venireperson's] husband and son does not alone suffice to rebut the defendant's *prima facie* case, since she herself was employed *** for the past [several] years." *Powell* is four-square with this case as it pertains to venireperson Dixon, who had 20 years of steady employment with the Chicago Board of Education. In fact, the unemployment of a relative has little, if any, impact on a venireperson's ability to serve, unless that venireperson indicates that it would. This is particularly true here where there is no evidence that Gaston committed armed robbery because he was unemployed. Thus the prosecutor failed to offer a "trial-specific" justification for the exclusion here. (See *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723-24.) The State attempts to avoid the holding in *Powell*, citing *Commonwealth v. Correa* (1993), 423 Pa. Super. 57, 62-63, 620 A.2d 497, 499-500; however, the *Correa* court offered no rationale for its decision finding unemployment of a relative to be nonpretextual. We, therefore, decline to follow it. The exclusion of Dixon was clearly pretextual.

(4) BETTY LEE HOLMES

The prosecutor offered two reasons for excluding Holmes. First, the prosecutor, relying on his argument for Dixon, noted that Holmes' son and daughter were unemployed. As with Dixon, we find that this, in and of itself, is a *Batson* violation. (*Powell*, 224 Ill. App. 3d at 134.) The prosecutor's second reason for excluding Holmes was that she was "extremely religious" and that she might, therefore, "look beyond's someone's guilt." The prosecutor concluded that Holmes was extremely religious as a result of her response to a question about her hobbies and family. She stated, "Well, I don't have too many hobbies. I read the [Chicago] Sun Times and I attend church." The prosecutor did not seek elaboration as to the extent of Holmes' religious practice or as to whether it would affect her ability to follow the law. Based on the record, no grounds exist for the prosecutor's conclusion that Holmes was "extremely religious." Under these circumstances, the prosecutor's reasoning was pretextual. See *People v. Cannon* (1992), 227 Ill. App. 3d 551, 556, 592 N.E.2d 168, *appeal denied* (1992), 146 Ill. 2d 635, 602 N.E.2d 461.

Reversed and remanded for a new trial.

MANNING, P.J., and CAMPBELL, J., concur.