THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT MARTINEZ, Defendant-Appellant.

First District (3rd Division)   No. 1—96—3090

Opinion filed June 10, 1998.

Rita A. Fry, Public Defender, of Chicago (Lisa S. Ottenfeld, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Beth Pfeifer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BURKE delivered the opinion of the court:

Following a jury trial, defendant Robert Martinez was found guilty of first degree murder and sentenced to 20 years' imprisonment. On appeal, defendant contends that the circuit court erroneously determined that defendant failed to make a *prima facie* case of racial discrimination during jury selection. For the reasons set forth below, we affirm.

On October 3, 1994, Fillamon Ibarra-Saucedo was shot to death at the LaAlondra tavern located at 2010 West 18th Street in Chicago, and defendant was subsequently charged with first degree murder of Ibarra-Saucedo. At trial, the court conducted a *voir dire* examination of two panels of venirepersons. Among the persons interviewed in the first panel were Patricia Brown, Valerie Perkins and Gregory Bonestro. Brown was a single black woman who lived with her three children and one grandchild. Brown did not work outside of the home. Perkins was a single black woman who lived alone in a home where she had resided for 17 years. Perkins had been a registered nurse since 1976 and had worked at her current job for 11 years. Bonestro, whose race was not indicated in the record, was employed and lived in an apartment with his wife and children.

The trial court excluded four venirepersons for cause from the first panel with no objections from either the State or defendant's counsel. The State, however, challenged Brown, Perkins and Bonestro with three of its seven peremptory challenges. Defendant challenged two venirepersons and made a *Batson* motion with regard to the State's challenges to Brown, Perkins and Bonestro. Thereafter, the following discussion ensued:

"MR. PALMER [defendant's counsel]: Based on my review of the cards, it appears there is really nothing to separate the three individuals from the remainder of the panel with regard to Miss Brown, forty-three, single, three kids. Although she doesn't own a home, she rents. She lived in the same place eleven years.

Miss Perkins is forty-five, divorced, three adult kids. She is an educated person as is the majority of this panel. She is a nurse, which I believe at least one other person that has been accepted by the State. She is a crime victim as many of the panel that is accepted by the State. She also owns a home. She has lived in her same address for seventeen years.

\* \* \*

Judge, it's our contention that there's nothing separating and distinguishing these \*\*\* individuals other than their race, and I believe that at this time we've met our burden, and we'd ask for—

THE COURT: State?

MR. NOONAN [Assistant State's Attorney]: I don't believe that is a prima facie burden.

THE COURT: Yes.

\* \* \*

THE COURT: \*\*\* I'll address all the questions where there's a systematic excuse of person of the same race, am I correct, or creed or color as the defendant. Two of the ladies, Miss Brown and Miss Perkins are both black or African Americans.

MR. PALMER: For the record, they are the only two African Americans or black persons in this panel.

THE COURT: That's correct.

It's my understanding the Defense would not, would not have the standing to object, am I correct?"

Defendant's counsel responded that he did not believe that was correct, but that he believed "there was a case," the name of which he could not remember, where a white defendant made the same argument regarding exclusion of blacks. The State responded that there was a United States Supreme Court case regarding a white defendant who "complained about the exclusion of blacks, and that was not found to be a valid reason by the U.S. Supreme Court." The State claimed that it believed that the case "came back" for other reasons

than the fact that the defendant did not have standing because he was white, and that "the inquiry goes more to the jurors themselves, not the race of the defendant." The trial court agreed and found that there was "no systematic exclusion of anyone" in this case. However, the trial court asked the State to explain the reasons for its challenges "so the record [will be] complete two years later if someone else upstairs disagrees."

The State responded that it excluded Brown because she "sat in the court with sunglasses on for quite awhile," she did not work, her answers were practically inaudible, and she was single with three children and a grandchild. Perkins was also single with three children, she sat in the jury box with her arms folded during questioning of the other venirepersons, and, in the State's opinion, "presented a very defiant attitude" when questioned by the court. Bonestro had four prior drug arrests.

Regarding Brown, defendant's counsel countered that the sun was shining through the windows[1] and that Brown did remove her sunglasses when she was being questioned. He further claimed that the fact Brown was single and had children was not a valid reason to have Brown removed from the jury. He also argued that Perkins, whose children were all adults, exhibited a "substantial stability" in living on her own for 17 years and holding a job for 11 years while being a single parent. Lastly, defendant's counsel argued that the fact that Bonestro had been arrested was not "sufficient to exclude him." Accordingly, he argued that the State failed to show sufficient race-neutral reasons for the exclusion of Brown, Perkins and Bonestro, and requested that the court deny the exclusions. The State responded:

"Just so the record is clear, if your Honor has not found a prima facie case, we don't have to offer any race neutral reasons, and your Honor just asked me as an aside for those reasons, which is what I did."

In response, the court stated, "I would agree. I would find there is no systematic exclusion. I'll note your exception."

Five members of the panel were then selected as jurors: Thomas Boecher, who had lived in a home for 12 years with his wife and had been a concrete truck driver for approximately 10 years; Paul Heckman, who worked outside his home as an actuary and lived in a condominium with his wife; Albert Janulis, who was a retired senior management systems specialist and had lived in a home for 36 years with his wife; Linda Salinas, a schoolteacher, who had lived in her

---

[1]The court in fact acknowledged that the sun was shining in the courtroom during *voir dire*.

home for 2¹/₂ years with her employed husband and two children; and Kathryn Zerate, a registered nurse, who had lived in her home for 16 years with her employed husband and family.[2]

The trial court then called a second panel and continued *voir dire*. After the court finished questioning the individual venirepersons, it excused one for cause with no objections from the State or defendant's counsel. The State utilized two of its peremptory challenges against single women whose races also are not indicated in the record. Seven members of the second panel, whose races are also not indicated in the record, were selected as jurors. Of these seven jurors, four were married and two were single. The seventh juror's marital status is not indicated in the record, but he claimed that he had resided in a home with his parents for the past 21 years.

After the conclusion of defendant's trial, defendant was convicted of first degree murder and sentenced to 20 years' imprisonment. This appeal followed.

Defendant contends that the trial court erroneously determined that he failed to establish a *prima facie* case of systematic exclusion of venirepersons based on race because there was a pattern of strikes by the State against African-American venirepersons and because the excluded African-American venirepersons were a heterogenous group which shared race as their only common characteristic. The State contends that the trial court properly determined that defendant failed to establish a *prima facie* case of discrimination and, assuming *arguendo* that defendant did establish a *prima facie* showing, the record clearly indicates that the State overcame that showing by offering neutral explanations for exclusion of the venirepersons other than their race.

In *Batson v. Kentucky*, 476 U.S. 79, 86, 90 L. Ed. 2d 69, 80, 106 S. Ct. 1712, 1717 (1986), the Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to .equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson* provides a three-step process for the evaluation of race discrimination claims in jury selection. *People v. Munson*, 171 Ill. 2d 158, 174, 662 N.E.2d 1265 (1996). An objecting defendant must first make a *prima facie* showing that the State has exercised peremptory challenges on the basis of race. If the defendant makes such a showing, then the burden shifts to the prosecution to articulate a race-neutral explanation for excluding the venireperson in question. The trial court then determines whether the defendant has met his burden of proving purposeful discrimination.

---

[2]The races of these jurors are not indicated in the record.

*Munson*, 171 Ill. 2d at 174. The trial court must next consider the State's proffered rationale for exercising its peremptory challenges and decide whether the reasons are merely pretextual and whether purposeful discrimination has taken place. *People v. Benson*, 266 Ill. App. 3d 994, 998, 641 N.E.2d 617 (1994).

■ A *prima facie* showing of discrimination under *Batson* requires that a defendant demonstrate that "relevant circumstances" in the case raise an inference that the prosecutor exercised peremptory challenges to exclude potential jurors from the jury on account of their ethnicity. *People v. Hudson*, 157 Ill. 2d 401, 425-26, 626 N.E.2d 161 (1993). The "relevant circumstances" necessary to establish a *prima facie* case include: (1) a pattern of strikes against minority venirepersons; (2) a disproportionate use of peremptory strikes against minority venirepersons; (3) the level of minority representation in the venire as compared to the jury; (4) the prosecutor's questions and statements during *voir dire* and while exercising peremptory challenges; (5) whether the excluded minority venirepersons were a heterogeneous group sharing race as their only common characteristic; and (6) the race of the defendant, victim and witnesses. *Hudson*, 157 Ill. 2d at 425-26. A trial court's decision as to whether a defendant has established a *prima facie* case of purposeful discrimination against black venirepersons will not be overturned unless it is against the manifest weight of the evidence. *People v. Henderson*, 142 Ill. 2d 258, 287, 568 N.E.2d 1234 (1990).

Defendant's primary argument in the case at bar is that he established a *prima facie* case of purposeful discrimination based on the State's use of peremptory strikes against two venirepersons. Defendant contends that because the trial court asked the State to provide reasons for excluding venirepersons, without first making a determination that defendant had met his burden of establishing a *prima facie* case of discrimination, this court need only rule on whether defendant in fact established a *prima facie* showing of discrimination. Defendant argues at length that he sufficiently demonstrated two of the six *Hudson* factors necessary to establish a *prima facie* case of discrimination: (1) a pattern of peremptory strikes by the State against African-Americans because the State challenged 100% of the African-Americans in the first panel; and (2) the excluded venirepersons were heterogeneous based on defendant's comparisons to them and the selected venirepersons.

The State argues that defendant failed to cite to any authority holding that a pattern of peremptory strikes is demonstrated whenever the State strikes all of the representatives of a particular racial group. The State further argues that Brown and Perkins were not a

heterogeneous group because they shared characteristics other than race, including a disrespectful attitude toward the court. The State therefore contends that the trial court properly determined that defendant failed to meet his *prima facie* burden of establishing purposeful discrimination.

■ In *Hernandez v. New York*, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866 (1991), which neither party cites, the Supreme Court held that the preliminary issue of whether the defendant has made a *prima facie* case of purposeful discrimination becomes moot where the trial court fails to determine whether a *prima facie* showing has been made, the State offers an explanation for the peremptory challenge without any prompting from the trial court, and the trial court rules on the ultimate question of intentional discrimination. In *Hudson*, another case which neither party cites, the State attempted to argue that the issue of a *prima facie* showing of discrimination did not become moot because, unlike the trial court in *Hernandez*, the trial court in *Hudson* specifically prompted the State to offer explanations for its peremptory challenges. Applying *Hernandez*, our supreme court in *Hudson* disagreed with the State and held that the *prima facie* issue becomes moot after the trial court finds neutrality in the State's explanations for its exclusions of venirepersons regardless of whether the State had or had not been prompted by the trial court to provide explanations. *Hudson*, 157 Ill. 2d at 427-28. See also *People v. Mitchell*, 152 Ill. 2d 274, 604 N.E.2d 877 (1992).

Our courts have repeatedly stated that after determining that the issue of whether a defendant made a *prima facie* case was moot because the trial court ruled on the ultimate question of purposeful discrimination by finding that the State's explanations were valid, a reviewing court then turns to the next step of the *Batson* analysis and considers whether the State presented race-neutral reasons for the exclusion of black venirepersons. *People v. Thomas*, 266 Ill. App. 3d 914, 920, 641 N.E.2d 687 (1994). In *Thomas*, after the defendant moved for mistrial under *Batson*, the trial court held that the defendant failed to establish a *prima facie* case of discrimination. However, the trial court nonetheless required the State to provide reasons for its exclusions because the court "believe[d] that there would be certain panels under the Illinois Appellate Court First District that would substitute [the trial court's] opinion." *Thomas*, 266 Ill. App. 3d at 918. See also *People v. Davis*, 287 Ill. App. 3d 46, 52, 677 N.E.2d 1340 (1997) (after determining that the *prima facie* case issue was moot, the court held that it "need only address the ultimate issue of whether there was intentional discrimination"); *Hudson*, 157 Ill. 2d at 428 (after determining that the *prima facie* case issue was moot, the court

held that "we need only review the trial court's ruling that the State's proffered reasons *** were race-neutral"). We also note that *People v. Walls*, 220 Ill. App. 3d 564, 581 N.E.2d 264 (1991), a case that defendant cites in his brief, specifically held that even if the trial court did err in that case in deciding the preliminary question of whether a *prima facie* showing of discrimination had been made, that issue need not be considered on review because the trial court heard the State's reasons and ruled on the issue of discrimination. *Walls*, 220 Ill. App. 3d at 573.

■ In the present case, like *Hernandez* and *Hudson*, the issue of whether defendant established a *prima facie* case of discrimination is moot because the trial court prompted the State to present its reasons for exercising its challenges against the venirepersons. And as in *Thomas*, the trial court here, contrary to defendant's argument, first found that defendant failed to establish a *prima facie* case *before* requesting reasons from the State for its exclusions in case "someone else upstairs disagrees." Because the trial court found "no systematic exclusion" after hearing the State's proffered reasons, we hold that the initial *prima facie* issue in the *Batson* analysis is moot. Because the issue is moot, we need not discuss defendant's argument that two of the *Hudson* factors necessary in establishing a *prima facie* case exist in this case, nor the State's lengthy counterargument on the same issue.

We briefly note that defendant's reliance on *People v. Jackson*, 145 Ill. 2d 43, 582 N.E.2d 125 (1991), in support of his argument that, because the trial court requested that the State provide reasons for excluding Brown and Perkins without first making the determination that defendant met its burden of establishing a *prima facie* case of discrimination, this court is therefore "only ruling on whether there was indeed a *prima facie* showing of discrimination," is misplaced. We first observe, as discussed above, that the trial court found that defendant failed to establish a *prima facie* case before the State informed the court of its reasons for its exclusion of venirepersons. Moreover, defendant merely cites *Jackson*; he fails to provide any specific reasoning or argument as to how *Jackson* is applicable to the case at bar. When an appellant seeks reversal, theories that are not pursued or advanced with citation to relevant authority are deemed waived. *People v. Wendt*, 163 Ill. 2d 346, 356, 645 N.E.2d 179 (1994). Defendant has thus waived this argument.

Notwithstanding defendant's waiver, *Jackson* clearly does not stand for the proposition that a reviewing court may only rule on whether a defendant established a *prima facie* case of discrimination where a trial court asked the State to provide race-neutral reasons for

exclusion of venirepersons without first determining that the defendant had met its burden. In *Jackson*, when the State exercised a peremptory challenge against a black juror, the trial court, on its own initiative, required the State to provide reasons for excusing the juror notwithstanding that the defendant had neither raised a *Batson* issue nor attempted to establish a *prima facie* case of discrimination. While the *Jackson* court cautioned trial courts against procedures whereby "the first step in the *Batson* analysis is *omitted altogether*," it never specifically held that it was limited on review to the sole question of whether a *prima facie* case had been established. (Emphasis added.) *Jackson*, 145 Ill. 2d at 98. Additionally, *Jackson* is distinguishable from the present case; as discussed above, unlike defendant here, the *Jackson* defendant never raised a *Batson* issue, nor attempted to establish a *prima facie* case of discrimination before the State offered its reasons for exclusion of venirepersons. *Jackson*, 145 Ill. 2d at 96.

We next address the issue of whether the State's proffered reasons for its exclusions of venirepersons were race-neutral. Because defendant, as previously discussed, argues that the only relevant issue on appeal is this court's determination of whether a *prima facie* case had been established, defendant did not directly address the issue of whether the State's proffered reasons were race-neutral. However, because the two issues involve a somewhat similar analysis and consideration on review, defendant's argument regarding the *prima facie* issue will be discussed in relation to the analysis of whether the State's proffered reasons for exclusion were race-neutral.

Defendant contends that there was a pattern of strikes against African-Americans because in challenging Brown and Perkins, the State effectively challenged 100% of the potential African-American venirepersons.[3] Defendant argues that the State's articulated marital status for exclusion of Brown and Perkins was "a basis that strongly suggests illicit motives." Defendant cites *Walls* in support of his proposition that "this court has frowned upon the use of a woman's status as an unmarried woman as a basis for excluding jurors." Defendant

---

[3] Pursuant to this "argument," defendant appears to compare these two excluded women with each other, the reasons for which we are unable to ascertain. Defendant maintains that, other than "the fact that the other two black jurors were excluded[,] other enumerated factors are apparent in this case," *i.e.*, Brown and Perkins "were heterogeneous" because "they differed" from each other in that Perkins was divorced while Brown had never married; Perkins owned her own home while Brown rented; Perkins was a nurse while Brown did not work. Based on these statements, we cannot determine what defendant's argument is and, in any event, defendant has waived this "argument" in failing to cite any authority. *Wendt*, 163 Ill. 2d at 356.

asserts that "[e]ven if[,] *arguendo*, being an unmarried mother demonstrates traits that would not make that individual an unbiased juror, with statistics showing that 50% of marriages end in divorce, extending that stigma to divorced individuals is unacceptable." Defendant also argues that the fact that Brown wore sunglasses while sitting in the jury box until she was questioned, even though it was obvious she was shielding her eyes from the sun, and the fact that Perkins kept her arms folded are "simply not credible reasons to exclude jurors."

The State contends that its reasons for excluding Brown—because she sat in the jury box with sunglasses on, she did not work, her answers were almost inaudible, and she was single with three children and a grandchild—were clearly race-neutral. The State argues that, although defendant noted that the sun was shining in the courtroom, the trial court nonetheless had the opportunity to observe Brown's demeanor and to assess the legitimacy of the explanation offered by the State for her exclusion. The State claims that its reasons for excluding Perkins—because she was single, had three children, and the prosecutor believed that she presented a defiant attitude when she was questioned by the court and during questioning of the other venirepersons—were also race-neutral reasons.

The State further argues that the prosecutor never stated that Brown and Perkins were challenged because they were unmarried mothers. According to the State, the factor that distinguished both Brown and Perkins was their disrespect toward the court and not their status as unmarried mothers. The State also maintains that *all* of the women excluded by the State were unmarried. The State further argues that defendant's reliance on *Walls* is misplaced because the court in *Walls* determined that the prosecutor's reason for striking a potential juror because of her *parental status* and the proximity in age between the potential juror's children and defendant were pretextual based on its observation that there were several other jurors who were accepted by the State despite the fact that they were parents of children who were approximately the same age as the defendant. *Walls*, 220 Ill. App. 3d at 574. Therefore, the State maintains that the *Walls* holding is inapplicable to this case because the excluded juror's marital status was not even considered by the *Walls* court.

■ It is well settled that the second step in the *Batson* analysis does not demand an explanation by the State that is persuasive or even plausible. The issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reasons offered will be deemed race-neutral. *People v. Figgs*, 274 Ill. App. 3d 735, 739-40, 654 N.E.2d 555

(1995). A neutral explanation is an explanation based on something other than the race of the venireperson. *Benson*, 266 Ill. App. 3d at 998.

■ The exclusion of even one prospective juror based on race is unconstitutional and requires reversal of a conviction. *People v. Britt*, 265 Ill. App. 3d 129, 133, 638 N.E.2d 282 (1994). A reviewing court should not overturn a trial court's finding on the issue of discriminatory intent in the prosecution's use of preemptory challenges unless it is convinced that the trial court's determination was clearly erroneous. *People v. Champs*, 273 Ill. App. 3d 502, 506, 652 N.E.2d 1184 (1995). Because the trial court's finding regarding discriminatory intent is a matter of fact and a question of credibility, the trial court's findings are afforded a great deal of deference on review. *Munson*, 171 Ill. 2d at 174. See also *People v. Mahaffey*, 128 Ill. 2d 388, 415, 539 N.E.2d 1172 (the court held that trial judges can draw on their powers of observation, judicial experience and familiarity with local conditions and prosecutors as a guide in distinguishing a true case of discrimination from a false one). However, reviewing courts must attempt to make a meaningful assessment of the State's reasons for challenging venirepersons if *Batson* is to be followed in practice and not just theory. *Walls*, 220 Ill. App. 3d 564.

One of the purposes of *voir dire* is to observe the demeanor of the prospective jurors. A trial court is in the best position to observe the demeanor of the venirepersons and then evaluate the State's explanation for exercising a peremptory challenge. *Benson*, 266 Ill. App. 3d at 1001. Because an explanation that focuses on a venireperson's body language or demeanor lends itself to pretext, it must be scrutinized carefully; however, the demeanor of a prospective juror has traditionally been an important factor in jury selection, and thus constitutes a legitimate, racially neutral reason for exercising a peremptory challenge. *People v. Williams*, 164 Ill. 2d 1, 19, 645 N.E.2d 844 (1994) (the court held that the trial court's assessment of the State's race-neutral reason for exclusion of a venireperson, because the person failed to remove his hat in court, was not erroneous). The *Fryer* court similarly upheld the exclusion of a venireperson based on the State's reason that he was unemployed, unwilling to make eye contact with the prosecutor and wearing sunglasses which made the prosecutor unable to see what he "was doing." *People v. Fryer*, 247 Ill. App. 3d 1051, 1061, 618 N.E.2d 377 (1993). See also *People v. Gaston*, 256 Ill. App. 3d 621, 622, 628 N.E.2d 699 (1993) (holding that a reviewing court will generally rely on the trial judge's determination regarding an exclusion of a venireperson based on the demeanor of the venireperson because such exclusion "forms the historical basis of the peremp-

tory system," and absent a "specific attack on the trial judge's finding," that finding is not clearly erroneous).

Moreover, when the State does not rely solely on one reason in explaining a peremptory challenge, the challenge can be deemed race-neutral on another reason given. *People v. Randall*, 283 Ill. App. 3d 1019, 671 N.E.2d 60 (1996). In addition to holding that demeanor is a race-neutral factor in juror exclusion, our courts have also held that a prospective juror's unemployment status is a race-neutral reason for exercising a peremptory challenge. *Gaston*, 256 Ill. App. 3d at 623. See also *People v. Mack*, 128 Ill. 2d 231, 241, 538 N.E.2d 1107 (1989); *People v. Campbell*, 240 Ill. App. 3d 179, 608 N.E.2d 229 (1994). Exclusions on the basis of the prospective juror's unmarried status have also been held to be race-neutral, especially when almost all the jurors impanelled were married and had children. *Gaston*, 256 Ill. App. 3d at 622, citing *People v. Baisten*, 203 Ill. App. 3d 64, 79, 560 N.E.2d 1060 (1990).

■ In the present case, we hold that the trial court's determination that there was no systematic exclusion of minority venirepersons based on the State's proffered reasons for excluding Brown and Perkins was not erroneous because a discriminatory intent was not inherent in the State's explanations. The State offered more than one reason for excepting both Brown and Perkins. While the State's reasons for excluding Brown and Perkins based on their demeanor (*i.e.*, that Brown wore sunglasses and that Perkins sat in a "defiant" manner with her arms crossed) should be scrutinized closely on review for pretext, a careful review of the record does not indicate discriminatory intent based on the State's reasons. It must be remembered that the trial judge, who was able to view the complained-of "demeanor" of both venirepersons, nonetheless accepted the State's reasons for exclusion based on these reasons, even after defense counsel pointed out to the court that the courtroom was exceptionally sunny.

Moreover, the State's challenges can be deemed race-neutral on proffered reasons other than demeanor, *i.e.*, Brown's unemployment status and both Brown's and Perkin's marital status. Of the five prospective jurors from both the first and second panel that were excluded by the State, four were unmarried. While the fifth venireperson (Bonestro) was married, he was excluded by the State for the specific reason that he had four prior drug arrests. Additionally, 9 of the 12 selected jurors were married, two were single and the marital status of one is not specified in the record. Because *Gaston*, in which most of the selected jurors were married with children, determined that a venireperson's marital status is a race-neutral factor, we find that the State's alleged reasons for excepting Brown and Perkins based on

marital status, as defendant argues, constitutes a nondiscriminatory reason for exclusion.

We also briefly note that defendant has misquoted the record in stating that "the State excepted Eloise Mason (Mason), a divorced nurses [*sic*] aide who was living with her adult child. (R. B110-132, A 47)." A review of page A 47 reveals that Mason worked for a publishing company and resided with her fiance and youngest daughter. Similarly, a review of pages R. B110-132 does not indicate that Mason was a nurse's aide. Moreover, even if defendant's characterizations of Mason were accurate, defendant has failed to provide this court with an explanation of how Mason's exclusion is relevant to Brown's and Perkins' exclusions.

■ Defendant next contends that the trial court's "ignorance of the law," in stating that a defendant of a different race had no standing to challenge the exclusion of members of another race and in ignoring the requirement that a trial court make a *prima facie* determination before asking the State to present race-neutral reasons, should be considered by this court in reviewing whether the trial court applied the correct law to determine that no systematic exclusion based on race existed. The State contends that the trial court's "momentary confusion" on whether defendant had standing to challenge the exclusion of prospective jurors of a different race was obviated after both defense counsel and the prosecution reminded the court that the focus of the inquiry was the jurors themselves and not the race of defendant. The State argues that because the trial court acknowledged that "both sides were right" and that defendant had standing, the record is clear that the trial court followed the law in determining that defendant failed to make a *prima facie* showing of discrimination.

Although it is not clear from defendant's brief, defendant seems to argue that this court should somehow "consider" the fact that the trial court initially made an allegedly erroneous statement regarding the law of standing to present a *Batson* motion when we determine whether the trial court erred in finding that defendant did not, in fact, establish a *prima facie* case. Defendant cites no authority for his assertion that a reviewing court should "consider" the trial court's alleged "ignorance of the law" when determining whether the trial court's acceptance of the State's proffered reasons for exclusion was clearly erroneous and has therefore waived this issue. *Wendt*, 163 Ill. 2d at 346. Moreover, because the trial court ultimately ruled that defendant had standing to bring a *Batson* motion and heard defendant's argument regarding purposeful discrimination, no error occurred regarding this issue. Even if defendant's assertion was more thoroughly briefed, because the *prima facie* issue is moot, this court need not consider any alleged errors regarding this issue.

342

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LEAVITT, P.J., and CAHILL, J., concur.