2022 IL App (1st) 123561-U

SECOND DIVISION
May 24, 2022

No. 1-12-3561

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 09 CR 22009 |
| | ) | |
| SPENCER MARTIN, | ) | Honorable |
| | ) | Steven J. Goebel, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County finding defendant failed to establish a *Batson* violation is reversed, defendant's conviction is vacated, and the cause is remanded for a new trial; the manifest weight of the evidence is that the State was motivated by racial discrimination when it exercised a peremptory strike against one Black female juror based on judgments about her from her answers to questions during *voir dire* where the State did not exercise a peremptory challenge against a similarly situated non-Black juror and formulated excuses for his similar responses.

¶ 2    Following a jury trial, the circuit court of Cook County convicted defendant, Spencer

Martin, of the first-degree murder of Earl Willis. The jury also found that defendant personally

discharged the firearm that proximately caused Willis' death. Following posttrial motions, the

trial court sentenced defendant to a 60-year term of imprisonment for the first-degree murder charge and natural life imprisonment for the firearm enhancement.

¶ 3   Defendant appealed his conviction claiming that after the State used four peremptory challenges to exclude four African-American venirepersons from the jury, the trial court erred when it denied him the opportunity to hold a *Batson* hearing on the grounds defendant's motion for a *Batson* hearing was untimely. Defendant also alleged the trial court erred when it admitted into evidence a bullet from a prior crime defendant was implicated in because the State failed to establish a sufficient chain of custody for the bullet. We remanded this matter to the trial court for it to conduct a *Batson* hearing. On remand, following the hearing ordered by this court, the trial court found defendant failed to make a *prima facie* showing of a *Batson* violation. Defendant appealed. We reversed and found defendant did make a *prima facie* showing of a *Batson* violation. We again remanded, this time for second and third stage *Batson* proceedings. After the trial court conducted the hearings we ordered in our second remand, the trial court held defendant failed to rebut the prosecutor's proffered race-neutral reasons for striking juror Sharon Hunter as pretextual.   For the following reasons, we reverse the trial court's judgment, find defendant carried his burden under *Batson* as to potential juror Hunter, reverse defendant's conviction and sentence, and remand for a new trial.

¶ 4                                 BACKGROUND

¶ 5   Given the procedural posture of this case and in light of our holding requiring a new trial, we will confine our discussion of the facts that led us here to the relevant portions of the proceedings in the trial court following our last remand and any additional facts necessary to an understanding of our disposition. Additional background information can be found in detail in our prior orders.

¶ 6    Following trial the jury found defendant guilty of first-degree murder and further found defendant personally discharged a firearm that proximately caused the death of Willis. Following a sentencing hearing, the trial court judge sentenced defendant to a 60-year term of imprisonment for the first-degree murder charge and a natural life term for the firearm enhancement.

¶ 7    During jury selection the State used four peremptory challenges, all used to strike four African-Americans. Defendant is African-American. Following these strikes, defense counsel asked the prosecutor if he (defense counsel) needed to make a motion based on the strikes, but then indicated that he would not make a motion yet. Following jury selection, but before the jury was sworn in, defendant's attorney informed the court he wanted to make a *Batson* motion. The court initially denied that request as untimely. We reversed, found defendant's motion for a *Batson* hearing was timely, and remanded for the trial court to conduct a *Batson* hearing. *People v. Martin*, 2019 IL App (1st) 123561-U, ¶ 7.

¶ 8    On remand, following a hearing, the trial court found defendant failed to make a *prima facie* case of a *Batson* violation.  2019 IL App (1st) 123561, ¶ 10. We reversed that judgment and remanded for second and third stage proceedings under *Batson*. We directed the trial court to file its findings of fact and conclusion of law with the clerk of this court. *Id*. On remand, following the second and third stage proceedings ordered by this court, the circuit court of Cook County made stage two and three *Batson* hearing findings, which it filed with this court. We will recount the relevant portions of those findings in conjunction with the explanation of our disposition. In sum, the trial court found that "nothing [the] court observed at jury selection or at the *Batson* hearing [leads the] court to believe the prosecutor excluded jurors based on race" and denied defendant's *Batson* motion.

¶ 9    This appeal followed.

¶ 10                                              ANALYSIS

¶ 11    Initially we note defendant has only pursued argument in this most recent appeal about

potential juror Hunter, resulting in waiver of argument about the remaining stricken Black

potential jurors. *People v. Vega*, 2018 IL App (1st) 160619, ¶ 47 ("points not argued in a

defendant's opening brief are forfeited")).

¶ 12    As we stated in defendant's initial appeal:

>        " 'In *Batson,* the United States Supreme Court held that, in a criminal case, the
>
>        fourteenth amendment's equal protection clause prohibits a prosecutor from using
>
>        a peremptory challenge to exclude a prospective juror solely on the basis of his or
>
>        her race. [Citation.] Under *Batson,* the equal protection clause is violated when
>
>        the facts show that the State excluded an African-American venireperson on the
>
>        assumption that he or she will be biased in favor of defendant simply because of
>
>        their shared race.' *People v. Davis*, 345 Ill. App. 3d 901, 907 (2004). There is a
>
>        three-step process that the court must engage in when reviewing a *Batson* motion.
>
>        First, the party objecting to the exercise of a peremptory challenge is required to
>
>        establish a *prima facie* case of purposeful discrimination 'by showing that the
>
>        totality of the relevant facts gives rise to an inference of discriminatory purpose.'
>
>        See *Batson v. Kentucky,* 476 U.S. 79, 93-94 (1986). If the objector demonstrates a
>
>        *prima facie* case, the burden then shifts to the other party to explain his challenge
>
>        by articulating a nondiscriminatory, 'neutral' explanation related to the particular
>
>        case to be tried. *Batson,* 476 U.S. at 97-98. Finally, the trial court considers the
>
>        reasons provided for the peremptory strike and determines whether those reasons
>
>        are pretextual or whether the objector has established purposeful discrimination.

*Batson,* 476 U.S. at 98." *Martin*, 2014 IL App (1st) 123561-U, ¶ 45.

¶ 13    "A trial court's determination as to intentional discrimination is a finding of fact and will not be overturned unless it is against the manifest weight of the evidence." *People v. Sims*, 249 Ill. App. 3d 246, 249 (1993). "[G]enerally a trial court's ultimate conclusion on a *Batson* claim will not be overturned unless it is clearly erroneous." *People v. Davis*, 233 Ill. 2d 244, 261 (2009). "A finding is clearly erroneous when a review of the record leaves a reviewing court with the definite and firm conviction that a mistake has been made." *In re A.S.*, 2017 IL App (1st) 161259-B, ¶ 23.

¶ 14    We are primarily concerned with the third stage of the *Batson* hearing process, in which the trial court must determine whether the State's proffered race-neutral reasons for its juror strikes are a pretext and whether the defendant has established purposeful discrimination, because the State's burden to "to explain his challenge by articulating a nondiscriminatory, 'neutral' explanation related to the particular case to be tried" (*Batson,* 476 U.S. at 97-98) is relatively low, "as a 'neutral explanation' means any 'explanation based on something other than the race of the juror.' [Citation.]" *People v. Davis*, 231 Ill. 2d 349, 367 (2008) (citing *Hernandez v. New York,* 500 U.S. 352, 360 (1991)). In *Hernandez*, the United States Supreme Court instructed: "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360.

¶ 15    We find that the State's proffered reasons for its juror strikes are facially race neutral and there is nothing inherent in the State's explanation that is discriminatory. Stated differently, within the specific context of this case, there is nothing inherently discriminatory about a prosecutor's concerns about a juror who may be evasive or unable to understand complex

evidence, as asserted by the State with regard to potential juror Hunter. As to potential juror Hunter, we deem the State's proffered reasons for striking her race neutral. *Id.* However, we also find that in this case, the manifest weight of the evidence is that how the State reached those conclusions about juror Hunter and her treatment was not race neutral; therefore, we find the trial court erred in finding defendant did not establish purposeful discrimination in the third stage of the *Batson* hearing.

¶ 16    In the third stage of the *Batson* hearing, 'the trial court must determine whether the defendant has shown purposeful discrimination in light of the parties' submissions.' [Citation.] During this step, the court 'must evaluate not only whether the prosecutor's demeanor belies discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.' [Citation.]" *People v. Shaw*, 2014 IL App (4th) 121157, ¶¶ 19-20. "[T]he disproportionate impact of the prosecutor's explanation on minority venirepersons is relevant to the ultimate issue of purposeful discrimination." [Citation.]" *People v. Lovelady*, 221 Ill. App. 3d 829, 839 (1991) (citing *Batson,* 476 U.S. at 98, n. 21, *People v. Mack*, 128 Ill. 2d 231, 238 (1989)).

> " '[T]he decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province.' [Citation.]" *People v. Johnson*, 218 Ill. App. 3d 967, 984 (1991).

¶ 17    There are tools at our disposal to assist in assessing the record to determine whether the

State's juror strikes evince purposeful discrimination.

> "Since the Supreme Court's 2005 opinion in *Miller-El II* and its 2008 opinion in *Snyder*, comparative juror analysis has taken center stage, particularly in appellate and post-conviction review of the trial court's Step 3 *Batson* determination. *Snyder v. Louisiana*, 552 U.S. 472 (2008); *Miller-El v. Dretke*, 545 U.S. 231 (2005) (*Miller-El II*); [citation]. The court also employed this approach in *Flowers* and *Foster*, its most recent *Batson* decisions. *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019); *Foster v. Chatman*, 136 S. Ct. 1737 (2016)." Jurywork Systematic Techniques, *Comparative juror analysis for assessing credibility*, *Batson* and the Discriminatory Use of Peremptory Challenges in the 21st Century, 1 Jurywork Systematic Techniques § 4:46 (November 2021).

The comparative juror analysis has three elements: the court should conduct a side-by-side comparison of similarly situated struck and seated jurors, who are not required to be identical in all respects, and then, if the reason for a strike "applies just as well" to a struck and "otherwise-similar" seated juror, "that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Id.* at § 4:47 (citing *Miller-El II*, 545 U.S at 241). The United States Supreme Court has applied a comparative juror analysis to disparate questioning and investigation of similar potential jurors on similar issues, and it has found purposeful discrimination based on such disparate treatment. See *id*. (citing *Flowers*, 139 S. Ct. at 2247).

¶ 18　　In *Flowers*, the Court noted that it had previously held that " 'if the use of disparate questioning is determined by race at the outset, it is likely [that] a justification for a strike based on the resulting divergent views would be pretextual. In this context the differences in the

questions posed by the prosecutors are some evidence of purposeful discrimination.' [Citation.]" *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 344 (2003)). The *Flowers* Court found that "[t]he lopsidedness of the prosecutor's questioning and inquiry can itself be evidence of the prosecutor's objective as much as it is of the actual qualifications of the black and white prospective jurors who are struck or seated." *Flowers*, 139 S. C.t at 2248. The Court concluded that a "prosecutor's dramatically disparate questioning of black and white prospective jurors—at least if it rises to a certain level of disparity—can supply a clue that the prosecutor may have been seeking to paper the record and disguise a discriminatory intent." *Id*. The Court cautioned, however, that

> "disparate questioning or investigation alone does not constitute a *Batson* violation. The disparate questioning or investigation of black and white prospective jurors may reflect ordinary race-neutral considerations. But the disparate questioning or investigation can also, along with other evidence, inform the trial court's evaluation of whether discrimination occurred." *Id*.

In *Flowers*, the Court held that "the State's striking of five of six black prospective jurors at the sixth trial [and] the dramatically disparate questioning and investigation of black prospective jurors and white prospective jurors at the sixth trial strongly suggests that the State was motivated in substantial part by a discriminatory intent." *Id.*

¶ 19    Applying the foregoing to the facts and circumstances of this case, we find the trial court's judgment that "nothing [in] jury selection or at the *Batson* hearing *** leads [the] court to believe the prosecutor excluded jurors based on race" is clearly erroneous. Here, the State used a peremptory challenge against a Black potential juror because she could not recall the name of her adult son's place of employment or where her ex-husband was employed at all. We previously

found that on its face alone, an "important fact for purposes of the comparative juror analysis is that the non-African-American juror expressed the same level of uncertainty with regard to his child's place of employment as did the African-American potential juror the State struck with a peremptory challenge." *Martin*, 2019 IL App (1st) 123561-U, ¶ 28. The Black juror arguably provided more detail about her son's employment in that the nature of his work and his place of employment could be readily identified—a retail store located at the corner of 21st and Pulaski in Chicago—compared to the non-Black juror, who only said his daughter worked at the North University or "Northern," in that his daughter's place of employment is unfathomable from the numerous universities in the Chicago area and who offered nothing in the way of what she does there. We also note the trial court's reliance on the fact it would know "the name of the store" fails to account for the legacy of "corner stores" in minority communities which, this court will take judicial notice, may not be referred to by "name"' but by location.[1] We must also note that the trial judge's initial belief the Black potential juror's response about her ex-husband being in "Church's management" was "vague" because he was not sure whether or not she was referring to a religious institution or the fast food chain (that is located primarily in minority communities) was inappropriate and, rather than making even an initial judgment about the potential juror—a stain that may be  later difficult or impossible to remove—the trial judge should have, as it did, inquire further; but without any preliminary assessments.

¶ 20    Moreover, in this appeal, we agree with defendant's further argument that the State also treated the non-Black potential juror and the Black potential juror dramatically differently with regard to *why* they could not remember detailed facts about their adult children's lives. As

---

[1]     Google maps, an "easily accessible" source of information of "indisputable accuracy" confirms the presence of a traditional Chicago "corner store" at 21st and Pulaski.

defendant argues, the State used a peremptory challenge to strike a potential black juror who could not remember the "name" of a store where her son worked or where her ex-husband worked and, at the *Batson* hearing, justified the strike by characterizing her failure to respond as "evasive" and by questioning her ability to be attentive to detail. On the contrary, the State did not strike a non-Black juror who could not state the name of the university where his daughter work and did not volunteer what she did there and justified its conduct by asserting the non-Black juror had a language barrier and lived on the opposite side of town.

¶ 21    We agree with defendant that the Black juror did explain her inability to recall the name of her son's store by testifying he had only recently started working there. We also agree that there is nothing to suggest the Black potential jurors' ex-husband is a meaningful part of her life such that she should know where he works. Therefore, the fact she did not know that information adds nothing to the evaluation in this case. We also find that the State merely assumed the non-Black juror had a language barrier, assumed the non-Black juror was not familiar with the north side of Chicago, and assumed the university where his daughter worked was even on the north side because all the non-Black juror could say was "North University" or possibly "Northern."[2] Defendant is correct that "the State offered up possible reasonable explanations" for why [the non-Black juror] did not know the name of his daughter's job" that he himself "had not asserted" but did not give the Black juror the same consideration—which was not necessary because she did explain why she could not remember the name of her son's place of employment: he had only recently started, and why she did not know her ex-husband's place of employment was evident: the two were long-divorced. In other words, she cannot be credibly said to have

_____

[2]    Again, a quick resort to Google maps reveals the fact that "Northeastern Illinois University" has facilities at 39th and Cottage Grove, Northwestern University is downtown, and Northwestern College is located at 7725 S. Harlem in Bridgeview.

exhibited the basis for the strike attributed to her by the State. See *Shaw*, 2014 IL App (4th) 121157, ¶¶ 19-20.

¶ 22     We also agree with defendant that the State held the Black potential juror to the standard of having to explain her inability to provide the level of detail the State sought in answers to its questions (she did not, we emphasize, fail to answer) while the State explained the non-Black's juror exact same shortcoming for him. Similarly, the State's concern about "detail-oriented" jurors based on this alleged difference between the two potential jurors is unfounded. As stated above, when viewed properly the Black juror actually provided more detail about her child's employment than the non-Black juror.

¶ 23     The court's finding the State did not engage in racial discrimination in the State's use of its peremptory challenges is against the manifest weight of the evidence. The State's disparate treatment of the Black potential juror and the non-Black potential juror on the issue of their level of recall and candor about information related to their family, combined with the fact the State "use[d] four out of four peremptory challenges against African-Americans" (*Martin*, 2019 IL App (1st) 123561-U, ¶ 22) "informs" our evaluation and "strongly suggests that the State was motivated in substantial part by a discriminatory intent." Compare *Flowers*, 139 S. Ct. at 2247 (State actively attempted to disprove statement by Black juror but did not do so with regard to similarly situated white juror).

¶ 24     This court believes that the "exclusion of even one prospective juror based on race is unconstitutional and requires reversal of a conviction." *People v. Martinez*, 297 Ill. App. 3d 328, 339 (1998). We find the State's exclusion of the Black potential juror at issue was motivated primarily by racial discrimination. See *People v. Rivera*, 307 Ill. App. 3d 821, 827 (1999) ("racially motivated strikes by the State unconstitutionally discriminate against the excluded

jurors by denying them participation in jury service on account of their race" (citing *Batson,* 476 U.S. at 87)). Accordingly, we reverse defendant's conviction and remand for a new trial. In light of this holding, we have no need to and decline to address any of the remaining issues on appeal. See *People v. Butler*, 2021 IL App (1st) 171400, ¶ 56 (citing *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)). We do note defendant will, if necessary upon the State's second bite at the apple, have the opportunity to challenge the admission of certain evidence based on the chain of custody anew upon retrial including presentation of this court's most recent decisions on the subject and the trial court will decide the question in the first instance.

¶ 25                                             CONCLUSION

¶ 26     For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause remanded for further proceedings.

¶ 27     Reversed and remanded.